# JULY TERM, 1865, AT LANSING.

---

## Anne Durant v. The People.

*Receiving stolen goods—Evidence.*—Where one was charged with receiving stolen goods, knowing them to have been stolen, and a witness testified that he was present at an interview between the prisoner and her brother a few days prior to her arrest: *Held*, that what was said by the brother at that interview about sending the goods in question to the house of defendant, was proper evidence as tending to show the circumstances under which she received them.

*Offence of receiving stolen goods—possession of the goods, no evidence of guilt—* Possession of stolen goods is no evidence of the guilt of the person charged with receiving them, knowing them to have been stolen, and the circumstances, arrangement or understanding, under which the goods were received, may be shown as affecting the question of guilty knowledge.

*Statement of Prisoner.*—Where a defendant made a statement under the Act of 1863, and the Judge charged the jury that "he did not think such statement would warrant them in setting aside unimpeached sworn evidence." *Held,* that such charge was erroneous, and that if the jury believed such statement to be true against sworn evidence to the contrary, there is no arbitrary rule of law to prevent them from acting upon such belief.

*Heard May 9. Decided July 8.*

Error to the Recorder's Court of Detroit.

The facts are sufficiently stated in the opinion.

*J. Logan Chipman* for plaintiff in error.

*Albert Williams,* Attorney General, and *G. V. N. Lothrop,* for the People.

CHRISTIANCY J.:

Plaintiff in error was tried in the Recorder's Court of the City of Detroit upon a charge of receiving certain

stolen goods, the property of one Blodgett, knowing the same to have been feloniously stolen, &c.

The prosecution introduced evidence tending to show that the goods had been stolen by her brother, James Durant, who had been arrested a few days before the arrest of defendant, and imprisoned in the Wayne County jail; that these goods, with a considerable amount of other stolen property, were found in certain trunks in defendant's house, no person being at the time in the house but the defendant and one Thomas Kearney; that there were five of the trunks, four of which, at the time of the search and her arrest, she said belonged to her brother, and one she did not know who owned; that she stated the trunks were brought to her house the night before, and that she did not know who brought them; that she claimed to know nothing of the stolen property, stating that James Durant did not live with her, (and it does not appear that he did,) and that she had not seen him for a long time before her arrest.

The defendant introduced Thomas Kearney as a witness, who stated that he was at the house of the defendant when she was arrested and the trunks searched; that he had been a frequent visitor at her house for several years; that he never saw the trunks there till the evening before she was arrested; that he did not know how they came there, but that he knew her brother James Durant, and, after his imprisonment in Wayne County jail, and a few days before her arrest, he was present at an interview at the jail between the defendant and her brother, and heard a conversation between them. The witness was then asked by defendant's counsel what was said by said James Durant to the defendant at the jail in regard to sending his trunks to her house. This was objected to by the prosecution as incompetent. The counsel for the defendant stated his object was to show that, in said conversation, James Durant asked defendant

to permit him to send his trunks to her house for safe keeping, representing them to contain his personal baggage. The Court held the question incompetent, and excluded the evidence.

We think this ruling was erroneous. The defendant was not charged with larceny of the goods, and her possession could not be used as evidence tending to show that she had stolen them. Her possession must be regarded as innocent, unless shown to have been received with knowledge that they were stolen, or under circumstances which would satisfy the jury that she believed them to be stolen. Possession itself, without evidence tending to show such guilty knowledge, could have no tendency to establish her guilt. She did not, in fact, undertake to deny the possession, but admitting it, claimed she had come to the possession innocently, without notice that the goods were stolen. In the aspect the case had assumed when this question was proposed to the witness, guilty knowledge was practically the only question in dispute. But independent of the particular aspect the case had assumed upon the evidence, we think, in all prosecutions for this offence, it must, upon principle, be competent alike both for the prosecution and the defence to show what were the actual circumstances, the arrangement or understanding under which the goods were received by the defendant, whether the effect shall be to establish guilt or innocence. This is the *res gestæ*, the very essence of the enquiry. The counsel for the prosecution admit that she would have had the right to show that the trunks were *in fact* sent to her house, that they were her brother's, &c.; but without proof of other facts, he insists, the arrangement or conversation between her and her brother, in pursuance of which the brother was to send them, and she had consented to receive them, was inadmissible. But if the real circumstances, understanding and arrangement constituted the *res gestæ*, or the very

substance of the enquiry, then it necessarily follows that any facts may be shown which have any tendency to prove such circumstances, arrangement or understanding, though they may fall far short of direct proof, which is not always in the power of parties. The trunks might have been taken to her house, as she says they were in her absence, without her knowing by whom. And the hardships and injustice of refusing her the right of showing the facts proposed, because she could not establish certain other facts by direct proof, which would have rendered the evidence more satisfactory, is, we think, manifest.

The evidence given by the prosecution tended to show that her brother was the thief, and the information admitted that she was not. The prosecutor's evidence had at least as much tendency to show that the trunks were her brother's as that they were hers. Kearney's testimony tended to show they were not hers, and that they had not been at her house till the night before her arrest; and the proof of the conversation at the jail, in reference to the sending of the trunks, and what they contained, which was rejected, would, in connection with the other testimony, have tended to show that the trunks were sent to the house by the brother, in pursuance of the understanding. It would have had a tendency to establish the *res gestæ*, because if the conversation proposed to be shown was in good faith, so far as she was concerned, and the trunks were sent in pursuance of it, then that conversation was the *res gestæ*. Whether the conversation was in good faith on her part, or only an attempt to make evidence favorable to her, was a question for the jury to determine in view of all the circumstances and all the evidence in the cause. The only other question in the case arises upon the refusal to charge as requested, and the charge as given.

The defendant having, as permitted by the Act of

1863, made a statement on the trial tending to show that she was ignorant of what was in the trunks, and giving the particulars of the conversation at the jail in relation to them, and the reason why she supposed they were sent by her brother, tending to show that he informed her there was nothing in the trunks except what belonged to him, and that she was innocent of any criminal knowledge or intent, her counsel requested the Court to charge the jury "that the statement of the prisoner is entitled to such weight as the jury think it is worthy of, and that it is competent for the jury to believe it in preference to sworn testimony, if they think it entitled to such weight." The Court did charge "that the statement of the prisoner was entitled to such weight as the jury should think it was worthy of;" and if the Court had stopped here the charge would have been perfectly correct, and there would have been no error in refusing the balance of the charge requested. But the Court, after refusing to give the balance of the charge requested, went further, and told the jury that "he did not think such statement would warrant them in setting aside unimpeached sworn evidence."

This was in some measure contradictory of the former portion of the charge which we have already said was correct; for if the jury may give the statement such weight as they think it entitled to, it follows that they may believe it in preference to unimpeached sworn testimony, if, under all the circumstances and in view of all the evidence in the case, they believe it entitled to greater weight. It is not to be supposed that a jury would give it such greater weight unless they believed it most likely to be true; but if satisfied of this, there is not, and cannot be, any arbitrary rule, which is to prevent them from acting upon that belief, or which can require them to give greater credit to sworn testimony, though unimpeached, when they conscientiously believe it less

likely to be true. Juries are not bound to give credit to sworn testimony, though unimpeached, if they do not, in fact, believe it to be true. There may be something in the demeanor of the witness — his apparent intelligence, powers of observation or memory, or the inherent improbability of the state of facts to which he testifies, or the peculiar circumstances of the case, or the witness's relation to it, and many other considerations which need not be here enumerated, which may render his evidence, in the opinion of the jury, more or less improbable and unreliable; while the statement of the defendant may be so consistent with itself and with the circumstances of the case, and so natural and probable as to produce a conviction of its truth. There can be no test for the comparative weight which the statement or the sworn evidence shall have with the jury, but the greater or less conviction of its truth, which either may, in fact, produce upon their minds, after taking into consideration the temptation under which the defendant is placed in making the statement and all the evidence and circumstances of the case. The latter portion of the charge was therefore erroneous, and a new trial must be granted.

The other Justices concurred.