COMMONWEALTH *vs.* GEORGE L. PHELPS.

Berkshire.    September 11, 1906. — October 16, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, & BRALEY, JJ.

*Receiving Stolen Goods. Evidence. Practice, Criminal,* Exceptions, Testimony of accomplice.    *Accomplice. Witness.*

On the trial of an indictment for receiving and aiding in the concealment of stolen goods, although possession by the defendant out of the Commonwealth of goods stolen in the Commonwealth would not in itself warrant a conviction, evidence of such possession is competent in connection with other evidence to show that the defendant received the goods in this Commonwealth knowing them to have been stolen.

In a criminal as in a civil case no exception lies to a refusal to give a ruling if the substance of the ruling is contained in the judge's charge or if it has been given so far as it is material.

In a criminal trial in which the principal witness for the Commonwealth is an avowed accomplice of the defendant, there is no rule of law requiring the presiding judge to instruct the jury as to the weight to be given to the testimony of an accomplice.

INDICTMENT, found and returned in the county of Berkshire on January 8, 1906, charging, in the first count, that George L. Phelps of Williamstown on December 15, 1904, at North Adams bought, received and aided in the concealment of three thousand yards of cloth of the value of fifteen cents a yard, the property of the Arnold Print Works and stolen from that corporation, well knowing the property to have been stolen, in the second count, that on February 15, 1905, the defendant in like manner received three thousand yards of cloth, and, in the third count, that on May 29, 1905, the defendant in like manner received three thousand yards of cloth; in each case similarly owned and stolen and known to the defendant to have been stolen.

At the trial in the Superior Court before *Crosby*, J. it appeared that the stolen property consisted of about ten thousand yards of new " ladies' dress goods " worth about $2,000 manufactured by the Arnold Print Works at North Adams and stolen from the finishing room of that corporation by one Dooley, one of its

employees, who at the time of the trial was under indictment for stealing the goods.

Dooley was the principal witness for the Commonwealth. He testified that he told the defendant that if he would take the goods away from North Adams and dispose of them he would give him half of the proceeds and that the defendant agreed to try it; that they took the goods in boxes to the house of the defendant and afterwards shipped them tó Troy in the State of New York.

The defendant testified that he had known Dooley several years and had sold him farm produce, and always had found him and believed him to be an honest man; that in December, 1904, Dooley met him on the street and said " George, I want to see you. I have got some goods I bought at a bargain and want to dispose of "; that about a week later Dooley met the defendant and told him he bought those goods and that they were remnants, that he would like to have the defendant help sell them and wanted to make Williamstown headquarters, and said he would come over and show him about prices, and would give him half they made ; that the defendant brought over to Dooley some apples and got three boxes of goods ; that they were dry goods boxes and heavy; that afterwards Dooley came over to the defendant's house in Williamstown and they took the goods out of the boxes and marked them with tags, so that the witness would know what to sell them for; that these tags Dooley brought with him; that they measured the pieces of goods; that the defendant sold some of the goods at his house ; that Dooley said they could sell the goods in Troy ; that the defendant had nothing to do with shipping the goods to Troy and did not go to Troy with Dooley at the time the goods were shipped; that the name of A. L. Brooks was marked on the boxes by the defendant at the request of Dooley ; that afterwards Dooley told the defendant that the sale had fallen through and that he wanted the defendant to go to Troy, and the defendant went to Troy with Dooley ; that Dooley said that he wanted to hire a store and sort out some of the best goods, so they hired a store and moved the goods into the store and sorted out two boxes of the best goods and shipped them to New Jersey ; that the defendant went to Albany and tried to sell the goods, but did not sell any; that

the defendant afterwards shipped the goods to Chatham, and. finally sold them at Waterbury, Connecticut, to one Curran at five cents a yard.

The defendant also testified, that Dooley told him that he had bought the goods from an assignee, that Dooley never told him that the goods were not "straight goods," and that he never knew the goods were stolen until he was arrested.

The course of the trial is described in the opinion, where the defendant's requests for rulings and the manner in which they were dealt with by the judge are stated.

The jury returned a verdict of guilty on each count; and the defendant alleged exceptions. The judge imposed a sentence on each count, but afterwards on motion of the defendant suspended the sentence until the questions of law involved should be determined by this court.

*H. C. Joyner*, for the defendant.

*J. F. Noxon*, District Attorney, for the Commonwealth, submitted a brief.

MORTON, J. This is an indictment in three counts for receiving and aiding in the concealment of stolen goods. There was a verdict against the defendant on all of the counts, and the case is here on exceptions by him to the refusal of the judge to instruct the jury as requested.

Taking the exceptions which have been argued in the order of the requests to which they relate, the first was to the refusal of the judge to instruct the jury as follows: "1. That if the jury find that the defendant Phelps did not know that the goods had been stolen until after they had been shipped to Troy, New York, then his connection with them, out of the Commonwealth, will not warrant a conviction on this indictment. 2. That if the defendant did not know and had no reasonable ground to suspect that the goods had been stolen until after they were shipped out of this State, and after that time had nothing more to do with the goods in this State, then the jury will not be justified in finding the defendant guilty." Taking the requests literally, it may well be doubted whether they raise the point which the defendant has argued, and whether in any aspect of the case they could have been properly given. Although possession out of the Commonwealth of goods stolen in the Commonwealth would not

of itself warrant a conviction for receiving them and aiding in their concealment here, evidence of such possession would be competent against one accused of that offence. But assuming that the requests were intended to raise and did raise the question whether a guilty knowledge or belief first acquired outside of the State would warrant a conviction, we think that, if there was any evidence warranting such a contention, the matter was sufficiently covered by the charge. Phelps was a witness in his own behalf and admitted receiving the goods in Williamstown, but denied any guilty knowledge or felonious intent, and testified that he " never knew the goods were stolen until he was arrested." He did not contend or testify that he first acquired such knowledge outside of the State. There would seem, therefore, to have been no evidence warranting a contention that he first obtained knowledge that the goods were stolen outside the Commonwealth. But the judge instructed the jury as follows : " with reference to the knowledge or the belief of the defendant that these goods were stolen property, I instruct you that he would be guilty if when he received these various lots of goods he knew or believed that they had been stolen or if at any time thereafter and while he had these goods or any portion of these goods in the State of Massachusetts he knew or believed that the goods were stolen property." We think it plain that the jury must have understood that in order to convict they must find that the defendant had acquired a guilty knowledge or belief when the goods first came into his possession, which was in this State or while they were in his possession subsequently in this State. The instructions requested were, therefore, given in substance and that was all that was required.

The next exception was to the refusal of the judge to instruct the jury, as in substance requested, that, as bearing on the question whether the defendant honestly believed that the goods had not been stolen, the jury might consider what manner of man Dooley had been before his connection with the defendant, and what the defendant honestly believed as to his integrity, and that it was enough if the defendant dealt with Dooley in the same way that reasonable men would deal under like circumstances. The attention of the jury was not specifically directed to the matters thus referred to, but their attention was directed to the

fact that the defendant testified that Dooley had told him that he had purchased the goods and that he, the defendant, understood they had been purchased by Dooley; and the jury were instructed that if he honestly believed that, if they found that Dooley did make such a statement to him and he acted in good faith supposing that statement to be true and acted in good faith throughout, he could not be convicted. In passing upon the defendant's good faith, the jury would necessarily have to take into account his conduct, and if they found that Dooley told him what the defendant testified that he did, then they would have to consider whether he was justified in believing what Dooley told him and the grounds for such a belief, amongst which would naturally be his knowledge and belief in regard to Dooley's standing and honesty. If they did not believe that Dooley told the defendant what he testified that he did, and if they believed Dooley as to the circumstances under which the goods came into the defendant's possession, then of course any question as to the defendant's belief in Dooley's integrity became entirely immaterial. The instructions given were, therefore, sufficient and the defendant was not harmed by the refusal to give those which were requested.

The last exception was to the refusal to instruct the jury as to the suspicious character of the testimony of an accomplice, and to advise them that such testimony should be carefully considered, and was unsafe to convict upon unless corroborated. The instruction thus requested related to Dooley's testimony. General instructions in regard to the credibility of the witnesses were given, and, whatever the practice may be, it is enough to say of the instruction thus requested that there is no rule of law requiring the judge to instruct a jury as to the weight to be given to the testimony of an accomplice. *Commonwealth* v. *Bishop*, 165 Mass. 148. *Commonwealth* v. *Clune*, 162 Mass. 206.

*Exceptions overruled.*