## COURT OF APPEALS.
### February 8, 1910.

## THE PEOPLE v. BENJAMIN ROSENTHAL.

### (197 N. Y. 394.)

(1). Junk Dealers—Purchase of Stolen Property—Statutory Construction.

The legislature has the right to declare a junk dealer, who purchases stolen property of a kind that is the constant subject not only of larceny, but of sale to junk dealers, guilty of a crime, whether he actually knows it had been stolen or not, provided he does not try to ascertain that the person selling the same had a legal right to do so.

(3). Same—Penal Code, § 550—Penal Law, § 1308—Constitutional Law.

The amendment to section 550 of the Penal Code by chapter 326 of the Laws of 1903, now embodied in section 1308 of the Penal Law, provides for the punishment of a dealer in junk who buys or receives stolen wire or metals of a certain kind belonging to a railroad, or other company named, without ascertaining by diligent inquiry that the person selling or delivering the same had a legal right to do so, and as so construed is not open to objection under either the State or Federal Constitution, since by adding the duty of diligent inquiry before purchasing it protects the dealers who in good faith comply with the statute, and provides for the punishment of those who do not.

(3). Same—When Second Indictment May be Found for Same Offense.

Although an indictment has been found, where the defendant has not been arraigned thereunder, or demurred or plead thereto, a second indictment can be legally found, and no order to re-submit to the grand jury is necessary, since it has jurisdiction to re-indict without such an order in case the defendant has not been put in jeopardy by the first indictment.

People v. Rosenthal, 134 App. Div. 907, affirmed.

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered August

5, 1909, which affirmed a judgment of the Monroe County Court rendered upon a verdict convicting the defendant of the crime of receiving stolen goods without diligent inquiry, and also affirmed three orders, the first made by the county judge of Monroe county directing a resubmission of the case to a grand jury; the second from an order of the Monroe County Court denying a motion to quash the indictment, and the third from an order of said court denying a motion in arrest of judgment.

On the 26th of March, 1908, the defendant was indicted by a grand jury in attendance at a Trial Term of the Supreme Court sitting in the county of Monroe for the crime of criminally receiving stolen property, in that he, being a junk dealer, purchased stolen copper wire belonging to a telephone company without ascertaining by diligent inquiry that the person or persons selling the same to him had a legal right to do so. The indictment was sent to the Monroe County Court for trial, and on the 7th of May, 1908, while the indictment was still in force, but before any plea had been entered or motion made in relation thereto, upon the application of the district attorney, founded on his own affidavit, the county judge of Monroe county made an order at chambers directing that the charge be resubmitted to the grand jury of that county then in session in connection with a Trial Term of the Supreme Court. On the 23d of May a second indictment was found containing four counts, the first of which was for substantially the same crime described in the indictment found on the 26th of March preceding. After the second indictment had been sent to the County Court and on the 11th of June, 1908, a motion was made to quash the same upon the ground that the grand jury had no jurisdiction to find it. On the 18th of June said motion was denied and on the 15th of December the defendant pleaded guilty to the first count of the second indictment, the other three counts being dismissed. When arraigned for sentence he made a motion

in arrest of judgment upon the ground that the court had no jurisdiction over the subject-matter of the count in the indictment to which he had pleaded guilty and that the facts stated in that count do not constitute a crime. The motion was denied and the court sentenced the defendant to be imprisoned in the Monroe County Penitentiary for two months and in addition thereto that he pay a fine of $250 or in default thereof that he be committed to said penitentiary for thirty days additional. Thereupon the defendant appealed from the judgment of conviction, from the order denying the motion in arrest of judgment, from the order of the Monroe county judge resubmitting the case to the grand jury and from the order denying his motion to quash the indictment. The Appellate Division unanimously affirmed the judgment and each of said orders and the defendant now appeals to this court.

*Percival De Witt Oviatt,* for appellant. Chapter 326 of the Laws of 1903 is unconstitutional. (*People v. Dowling,* 84 N. Y. 478; *Matter of Jacobs,* 98 N. Y. 106; *People v. Marx,* 99 N. Y. 377; *People ex rel. Madden v. Dycker,* 72 App. Div. 308; *Schnaier v. N. H. & I. Co.,* 182 N. Y. 83; *Wright v. Hart,* 182 N. Y. 330; *City of Buffalo v. Linsman,* 113 App. Div. 584; *Fisher Co. v. Woods,* 187 N. Y. 90; *People v. Williams,* 189 N. Y. 131; *Shaver v. Penn. Co.,* 71 Fed. Rep. 931.) The order resubmitting the case to the grand jury was void, and the second indictment, being based on a void order, was a nullity. This situation compels a reversal. (1 Freeman on Judgments [4th ed.], § 117; *People v. Bissert,* 71 App. Div. 118; *People v. Neidhart,* 35 Misc. Rep. 191.)

*Howard H. Widener,* District Attorney (*Freeman Fithian Zimmerman* of counsel), for respondent. The indictment is valid. (*People v. Fisher,* 14 Wend. 9; *People v. Bissert,* 71

21

App. Div. 118; *People v. Wilson*, 151 N. Y. 409; *People v. Palmer*, 109 N. Y. 117; *People v. Adler*, 140 N. Y. 335.) Section 550 of the Penal Code, as amended by chapter 326 of the Laws of 1903, is constitutional. (*People ex rel. Carter v. Rice;* 133 N. Y. 478; *People ex rel. Henderson v. Bd. of Suprs.*, 147 N. Y. 1; *People v. Steel*, 231 Ill. 340; *People v. Havnor*, 149 N. Y. 195.)

VANN, J.:

The indictment in question was found under section 550 of the Penal Code as amended in 1903 by chapter 326 of the laws of that year. As amended it reads as follows: " § 550. Criminally receiving property.—A person, who buys or receives any stolen property, or any property which has been wrongfully appropriated in such a manner as to constitute larceny according to this chapter, knowing the same to have been stolen or so dealt with, or who corruptly, for any money, property, reward, or promise or agreement for the same, conceals, withholds, or aids in concealing or withholding any property, knowing the same to have been stolen, or appropriated wrongfully in such a manner as to constitute larceny under the provisions of this chapter, if such misappropriation has been committed within the state, whether such property were stolen or misappropriated within or without the state, *or who being a dealer in or collector of junk, metals or second-hand materials, or the agent, employe or representative of such dealer or collector, buys or receives any wire, cable, copper, lead, solder, iron or brass used by or belonging to a railroad, telephone, telegraph, gas or electric light company without ascertaining by diligent inquiry, that the person selling or delivering the same has a legal right to do so,* is guilty of criminally receiving such property, and is punishable, by imprisonment in a state prison for not more than five years, or in a county jail for not more than six months, or by a fine

of not more than two hundred and fifty dollars, or by both such fine and imprisonment."

The part printed in italics was added by the amendment, no other change being made, and the section, as thus amended, was re-enacted in the Penal Law (§ 1308). The defendant claims that the amended portion does not describe an offense and that it is unconstitutional, because it applies only to junk dealers, protects only the property of railroad, telephone, telegraph, gas. and electric light companies, makes a test of criminality some-thing which can seldom be ascertained by the junk dealer and imposes on him the possibility of a criminal prosecution in connection with every transaction he undertakes, as well as the necessity of ascertaining the legal right of the seller, regardless of the fact whether or not the property has been the subject of a larceny.

The first question to be considered is what does the amend-ment mean? The entire section, including the amendment, consists of a single sentence divided only by commas. It pro-vides for the punishment of any person who receives stolen property knowing it to have been stolen, or who corruptly and for a consideration conceals any property knowing it to have been stolen, and then, in the same sentence, for the punishment of a person, who, being a dealer in junk, buys or receives stolen wire or metals of a certain kind, belonging to a railroad or other company named, without making diligent inquiry to ascertain that the person selling the same had a legal right to do so. While the amendment alone does not read in that way, we think that when the entire sentence is read together, as ob-viously it should be, it shows this to have been the intention of the legislature.

Prior to the amendment the legislature had provided for the punishment of one who receives stolen property knowing it to have been stolen, which under our decisions means not only ac-

tual knowledge, but also constructive knowledge, through notice of facts and circumstances from which guilty knowledge may fairly be inferred. (*People v. Wilson,* 151 N. Y. 403, 12 N. Y. Crim. 116; *People v. Dowling,* 84 N. Y. 478, 485.) It had also provided for the punishment of one who corruptly conceals property knowing it to have been stolen. By an act passed the day before the amendment in question, it had defined the "junk business" as "the business of buying or selling old metal," and had required junk dealers, except in cities of the first class, not only to take out a license, but, when purchasing such property, to procure a written statement from the seller "as to when, where and from whom he obtained" the same and file it with the sheriff or chief of police. (L. 1903, ch. 308.) By the next chapter, passed on the same day, it had prohibited junk dealers from purchasing from "any child under the age of sixteen years." (L. 1903, ch. 309.) These provisions, however, still left a dangerous loophole for unscrupulous junk dealers, who might outwardly conform to the law and yet be guilty of receiving stolen property knowing or having reason to know it had been stolen, when it would be difficult if not impossible, owing to the nature of the business and the way it is carried on, to prove knowledge or circumstances imputing knowledge. The legislature is presumed to have been familiar with current history and the decisions of the courts, which show that property of a certain kind, such as copper, brass, iron, etc., is frequently stolen from railroad, telegraph and similar corporations, which cannot adequately protect it because it is scattered through the country along extensive lines of transportation or communication, and which is exposed to view and caption by the evil minded, who find their best market in the shops of certain junk dealers. These second-hand materials are usually of such shape and form as to indicate at a glance use and ownership by a corporation of the kind specified. The legislature ob-

viously intended to afford the special protection needed by own-
ers of this kind of property by placing those dealing in it, when
second hand, under the risk of buying at their peril unless they
make diligent inquiry to ascertain whether those offering it for
sale had the legal right to sell it. This intention, while some-
what awkwardly expressed, as well as the intention to make the
entire sentence apply to stolen property, is reasonably clear
when the history of the legislation, the evil needing redress and
the context are taken into account. The successive steps taken
by the series of statutes show that the object of the legislature
was to afford all the protection possible against the evil of re-
ceiving stolen property, when the receiver either knew or should
have known that it was stolen. By adding the duty of diligent
inquiry before purchasing, it protects the junk dealers who in
good faith comply with the statute and provides for the pun-
ishment of those who do not.

Under this construction, the attack upon the substance of the
indictment has no foundation, for the statute upon which it
rests is not open to objection under either Constitution, State
or Federal. The legislature had the power to confine the
amendment to junk dealers, because they are way-wise and fur-
nish the chief if not the exclusive market for stolen property.
It had power to provide special protection to property of a cer-
tain kind widely used and owned by all corporations of a cer-
tain class, because such property, owing to its situation and
nature, and such owners, owing to the impossibility of ade-
quately watching and guarding it, need special protection as
shown by long experience. While it makes the proper discharge
of an active duty a " test of criminality," all that it requires
is good faith and honest inquiry, and that is no more than is
required by the common law in some cases, especially in the
purchase of commercial paper under certain circumstances.
The junk dealer is not responsible for the truth of what he

ascertains by inquiring, but he runs the risk if he purchases without diligent inquiry to ascertain the truth. The legislature had the right to declare a junk dealer, who purchases stolen property of a kind that is the constant subject not only of larceny but of sale to junk dealers, guilty of a crime, whether he actually knew it had been stolen or not, provided he did not try to find out by making diligent inquiry.

The second indictment was regularly found and it superseded the first. The Revised Statutes provided that " if there be at any time pending against the same defendant, two indictments for the same offense, or two indictments for the same matter, although charged as different offenses, the indictment first found, shall be deemed to be superseded by such second indictment, and shall be quashed." (2 R. S. part 4, chap. 2, tit. 4, art. 2, § 42.) The first indictment, therefore, was not of itself a bar to the second. (*People v. Fisher,* 14 Wend. 9, 14.) The section quoted was expressly excepted from the repealing act passed on the 5th of June, 1886, and is now section 292a of the Code of Criminal Procedure. (L. 1886, ch. 593, p. 829; L. 1909, ch. 66, § 1, p. 84.)

The People take nothing from the order of resubmission, which was a nullity, as the county judge held and as all now concede. No order to resubmit, however, was necessary, for the grand jury had jurisdiction to reindict without one. The defendant was not put in jeopardy by the first indictment, as he was not arraigned thereunder, nor did he demur or plead thereto. If he had demurred and the demurrer had been sustained, a second indictment could not have been lawfully found without an order of resubmission as authorized by the Code of Criminal Procedure, which has modified the practice at common law in this regard to some extent. (Code Cr. Prof. §§ 327, 329.) By the express command of the statute a judgment sustaining a demurrer is a bar to a further prosecution for the

same offense unless such an order is made.  (Id. § 327.)   No order to re-submit is required, however, unless the defendant has been put in jeopardy under a former indictment.   Even if the indictment is set aside on motion, it is not a bar to a further prosecution, although the defendant is entitled to be discharged from custody, " unless the court direct that the case be resubmitted to the same or another grand jury."   (Id. §§ 317, 320.)

We find no error in the record that affects the judgment of conviction.   The appeal from the order of resubmission is dismissed, but the other orders and the judgment of conviction are affirmed.

CULLEN, Ch. J., WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur; WERNER, J., not voting; EDWARD T. BARTLETT, J., absent.

Orders and judgment of conviction affirmed.