PEOPLE v. TANTENELLA.

1. RECEIVING STOLEN GOODS—ELEMENTS OF OFFENSE.

To support the charge of receiving stolen goods, it must appear that the goods were stolen, that the defendant received the stolen goods, that the goods were the same as those previously stolen, and that defendant had guilty knowledge at the time he received the goods or aided in their concealment.

On receiving stolen property, statute making failure to inquire as to possessor's right, equivalent to guilty knowledge, see note in 46 L. R. A. (N. S.) 31.

On what knowledge necessary to convict one of receiving stolen property, see note in 22 L. R. A. (N. S.) 833.

2. SAME—POSSESSION EVIDENCE OF GUILT.

   In a prosecution for receiving and aiding in the conceal-
   ment of stolen goods, although possession by the defend-
   ant out of the State of goods stolen in the State would not
   in itself warrant a conviction, evidence of such possession
   is competent, in connection with other evidence, to show
   that defendant received the goods in the State knowing
   them to have been stolen.

3. SAME—GUILTY KNOWLEDGE ESSENTIAL.

   To render a defendant guilty of receiving stolen property he
   must know at the moment of receiving it that it has been
   stolen, and he must at the same time receive it with
   felonious intent.

4. SAME—EVIDENCE—SUFFICIENCY.

   Evidence of defendant's guilty knowledge, *held*, sufficient to
   carry the case to the jury, and to sustain a conviction.

5. SAME—CONSTRUCTIVE KNOWLEDGE—INFERENCES.

   Guilty knowledge means not only actual knowledge, but con-
   structive knowledge, through notice of facts and circum-
   stances from which guilty knowledge may fairly be in-
   ferred.

Error to recorder's court of Detroit; Wilkins
(Charles T.), J. Submitted October 14, 1920. (Docket
No. 115.)   Decided December 21, 1920.

Sam N. Tantenella, *alias* William A. Carussa, was
convicted of receiving stolen goods, and sentenced to
imprisonment for not less than 1 nor more than 5
years in the Detroit house of correction.   Affirmed.

*Louis W. McClear* and *Donald Sarbaugh*, for appel-
lant.

*Alex. J. Groesbeck*, Attorney General, *Matthew H.
Bishop*, Prosecuting Attorney, and *Van H. Ring*, As-
sistant Prosecuting Attorney, for the people.

STONE, J.   This case is here upon writ of error to
the recorder's court of the city of Detroit, in which

court defendant was convicted of having, at the city of Detroit, on January 19, 1919, feloniously received and had in his possession, and with having aided in the concealment of, one Ford sedan automobile of the value of $400, the personal property, goods and chattels of Ella Collins, then lately before feloniously stolen, taken and carried away, the defendant then and there well knowing the said automobile to have been feloniously stolen, contrary to the provisions of section 15301, 3 Comp. Laws 1915. Upon the trial the evidence was undisputed that the said automobile was on the morning of Sunday, January 19, 1919, at about 9 o'clock, stolen and driven away from the corner of Beaubien and Jefferson streets, in the city of Detroit. The defendant was a witness in his own behalf, and he testified that between 10:30 and 11 o'clock a. m. of the same day a man by the name of Sam Tantenella, whom defendant had known for more than a year, came to defendant's home at 479 E. Congress street, Detroit, and employed defendant to drive a car to Chicago for him, offering to pay defendant $15 and expenses to make the trip. This offer defendant accepted. Among other things he testified as follows:

"I met this fellow over on Rivard and Fort with this Ford sedan, with this car that Miss Collins said belonged to her. I met him about 2 o'clock, and prior to that time he told me he would give me $15 and expenses to make the trip. * * * I have known this man quite awhile. I met him at 2 o'clock on Fort and Rivard and we parted and got something to eat before we left. We started from Detroit between 2:30 and 3 o'clock. We stopped at Somerset for over night where we put in a new radius rod. The roads were so rough that they bent the radius rod, and I put a new one in. We left Somerset about 9 o'clock the next morning, Monday morning, and got to Chicago on Tuesday. I couldn't exactly say, but about 10:30."

As to just what occurred in Chicago there is some conflict between the testimony of the defendant and

that of the police officers who took him in charge. Albert Woodrich, an officer of the Metropolitan police force of Chicago, testified that he first saw the defendant on the 21st day of January, 1919, at 649 S. Clark street, Chicago; that defendant had a hose and was cleaning a Ford automobile at the time. He testified as follows:

"I asked who the machine belonged to. He said it was his. I asked his name. I think he said Sam Tantenella. I asked him where he got the machine. He said, 'I bought it in Detroit.' I says, 'Have you got a bill of sale?' He says, 'Yes.' I says, 'Let me see it.' He showed it to me and I told him the bill of sale may be all right, and the car, but 'I am going to take you to the detective bureau.' "

The bill of sale seems to have been received in evidence, but does not appear in this record.

William H. Doyle, another member of the metropolitan police force, to whom defendant had been turned over, testified, among other things, that he went and looked at the automobile, describing it as a Ford sedan, looked at the motor number and found the last figure should be an "8"; it was changed to "5." The license number on the car at that time was 46,425. Miss Collins had testified that the license number on her car was 40,323. The witness, among other things, testified as follows:

"I talked with Tantenella later on after we had investigated a little more. He told me that he had bought the car. I asked what date he bought it. At that time I had that answer from Detroit. He said, 'I bought it on the 18th.' And the car was reported to us as stolen on the 19th. The 18th was Saturday. The 19th would be Sunday. This was the 21st he was arrested. He told me a fellow named Verne, I think it was, sold him the car for $375. We turned the car over to Mr. Collins the following Saturday."

The Mr. Collins referred to was Miss Collins'

brother, who went to Chicago and reclaimed the car. Mr. Collins testified that one tire was taken off and another had been changed on the rear wheel.

"The one that was on there was one I bought just previous to the time it was taken. I am absolutely positive it was my sister's car. The license number that was on the car when I got it was 46,425."

Steven J. Merritt, a member of the metropolitan police force of Detroit, testified that he made a search of the records for license number 46,425, the number on this bill of sale, and found that it belonged to a man named Wagon of Bad Axe, Michigan (Richard is his first name), for a Buick touring car.

"I have made a search as to the records of the number 1,497,285 of the Ford car and found that the owner was Sam Trigarler, 181 Fort street, and I have found that there is no such man or number. * * * When I went to Chicago to bring this defendant back he told me that he bought the car from a fellow named Joe Barn or Joe Barns in Detroit. At the time he bought the car he paid $375."

Miss Collins had testified that the motor number on her car was 1,497,288. The witness Doyle testified that the defendant, after the witness had discovered a picture of the defendant on his person with the name William Carussa on it, admitted that his name was not Tantenella, but Carussa.

There was a motion for a new trial upon the ground of newly-discovered evidence, which was denied. No exceptions seem to have been filed to the overruling of the motion, and the record fails to show that the claimed evidence was newly discovered in any sense. The question will therefore not be considered further.

Upon the argument and in the brief of counsel and by the assignments of error, it is claimed that the meritorious question is whether there was evidence sufficient to carry the case to the jury, that the de-

fendant had any knowledge or information that the car had been stolen at the time he received the same in the city of Detroit, it being the claim of counsel that knowledge or information that the car was stolen did not reach him until after he arrived in the city of Chicago. There is no question that to support the charge here made against the defendant it must appear:

(1) That the goods were stolen.

(2) The receiving of the property by the defendant.

(3) The identity of the goods as those previously stolen.

(4). The guilty knowledge of the defendant.

There is no question as to the first three points. There is no question under our decisions that there must be evidence of the prisoner's guilty knowledge at the time he received the property, or aided in its concealment. In other words, that he received the goods in question knowing them to have been stolen. In general this is to be collected from all the various circumstances of the case. Counsel for defendant cite the case of *Durant* v. *People,* 13 Mich. 351. This case has been cited with approval as recently as *People* v. *Mullis,* 200 Mich. 505.

Counsel for defendant also call our attention to the case of *Commonwealth* v. *Phelps,* 192 Mass. 591 (78 N. E. 741). We do not doubt that the rule there stated is the correct one. The head-note of the case reads as follows:

"On the trial of an indictment for receiving and aiding in the concealment of stolen goods, although possession by the defendant out of the commonwealth of goods stolen in the commonwealth would not in itself warrant a conviction, evidence of such possession is competent in connection with other evidence to show that the defendant received the goods in this commonwealth knowing them to have been stolen."

Our attention is also called by counsel to the case of *State* v. *Caveness*, 78 N. C. 484. The rule there stated is undoubtedly the law, that to render a defendant guilty of receiving stolen property he must know at the moment of receiving it that it has been stolen, and he must at the same time receive it with felonious intent.

In the case of *People* v. *Lintz*, 203 Mich. 683, in discussing the question of guilty knowledge, it was held that guilty knowledge under the statute is an essential element, and, when denied, is a question of fact for the jury. We are of the opinion that there was sufficient evidence of guilty knowledge of the defendant at the time he received, and had to do with, this automobile, to carry the case to the jury, and to sustain a conviction. He took charge of this car and admits that he drove it to Chicago, making repairs as necessary. He is found in the possession of it two days after it was stolen. He makes contradictory statements as to its ownership, how and where he received it, and gives the name of another person as his own. The condition of the car, the changes of the numbers, the fictitious bill of sale, all these things having intimately to do with the car he is found in possession of, were earmarks of his guilty knowledge, and it was for the jury to say, under the circumstances, when he first obtained that knowledge or information.

In *State* v. *Gordon*, 105 Minn. 217 (117 N. W. 483, 15 Ann. Cas. 897), the court said:

"Guilty knowledge on the part of the defendant was not directly proved. In the nature of things, that is ordinarily impossible; nor is it necessary. The circumstances accompanying the transaction may justify the inference by the jury that the prisoner believed, and had received the goods on belief that they were stolen. 2 Bishop Crim. Law, § 1138; 1 Wharton Crim.

Law, § 984; 24 Am. & Eng. Enc. Law (2d Ed.), p. 52."

In *Huggins* v. *People,* 135 Ill. 243 (25 N. E. 1002, 25 Am. St. Rep. 357), the court said:

"The knowledge of the prisoner, in this sense, is the gist of the offense, and must be found by the jury as a fact. In determining whether the fact existed, the jury will be justified in presuming that the prisoner acted rationally, and that whatever would convey knowledge or induce the belief in the mind of a reasonable person would, in the absence of countervailing evidence, be sufficient to apprise the prisoner of the like fact, and to induce in his mind the like impression and belief."

Guilty knowledge means not only actual knowledge, but constructive knowledge, through notice of facts and circumstances from which guilty knowledge may fairly be inferred. *People* v. *Wilson,* 151 N. Y. 403 (45 N. E. 862); *People* v. *Rosenthal,* 197 N. Y. 394 (90 N. E. 991, 46 L. R. A. [N. S.] 31). See note to *State* v. *Gordon,* 15 Ann. Cas. 899.

While we have held (*Durant* v. *People,* 13 Mich. 351) that mere possession cannot be used as evidence to show knowledge that the goods were stolen, we have also held that the fact of recent possession of stolen property, coupled with contradictory statements of the accused as to the possession of such property and aiding in concealing such property, was evidence of guilty knowledge. *People* v. *Harris,* 93 Mich. 617; *People* v. *Oblaser,* 104 Mich. 579; Tiffany's Criminal Law (Howell's 4th Ed.), pp. 559, 1043, 1047, 1048.

The admitted receiving into possession of this car by the defendant a few hours after it was stolen; his driving it to Chicago, in company with the probable thief; the evidence of the changing of the motor number and the license number; the claiming of ownership by him, and his exhibition of a bill of sale; his

assumption of the name of the person described as the purchaser in the bill of sale; the conflicting statements made by him as testified to by the witnesses named, constituted sufficient evidence upon the question of guilty knowledge to carry the case to the jury, and to justify the verdict of guilty.

We find no reversible error in the record, and the judgment of the trial court is affirmed.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.