PEOPLE v STARKS

Docket No. 46509. Submitted December 2, 1980, at Detroit.—Decided
    May 8, 1981. Leave to appeal applied for.

Dwayne Starks was convicted of receiving or concealing stolen
    property over the value of $100, Wayne Circuit Court, John M.
    Wise, J. He appeals, alleging that his pretrial identification
    violated his right to counsel, that he was denied effective
    assistance of counsel, and that the trial court erred in denying
    his motion for a directed verdict and by omitting portions of
    the standard jury instructions read to the jury. *Held:*

    1. Defendant's pretrial identification was proper despite the
    absence of counsel because it was an on-the-scene identification
    necessary to determine whether he should have been arrested.

    2. Defendant's in-court identification was based indepen-
    dently of his pretrial identification.

    3. Defendant was not denied effective assistance of counsel.

    4. The trial court properly denied defendant's motion for a
    directed verdict. The record reveals that a rational trier of fact
    could have inferred beyond a reasonable doubt that defendant
    had knowledge of the criminal nature of his acts.

    5. The record reveals that certain portions of the standard
    jury instructions were omitted inadvertently when read to the
    jury. But when read as a whole, the instructions do not consti-
    tute error requiring reversal.

    Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arrest § 44.
    21A Am Jur 2d, Criminal Law § 802.
[2] 81 Am Jur 2d, Witnesses § 655.
[3] 21A Am Jur 2d, Criminal Law § 752.
    Modern status of rule as to test in federal court of effective
    representation by counsel. 26 ALR Fed 218.
    Modern status of rules and standards in state courts as to adequacy
    of defense counsel's representation of criminal client. 2 ALR4th
    27.
[4] 75 Am Jur 2d, Trial §§ 481-485.
[5] 29 Am Jur 2d, Evidence § 204.
[6] 5 Am Jur 2d, Appeal and Error § 810.

1. CRIMINAL LAW — CORPOREAL IDENTIFICATION — RIGHT TO COUNSEL.

    Generally, a person who has been placed in custody has a right to counsel at a corporeal identification procedure except where an on-the-scene identification is necessary to determine whether he should be formally arrested, but the exception does not apply where the police clearly suspect that the person in custody committed a crime.

2. CRIMINAL LAW — WITNESSES — IDENTIFICATIONS.

    An in-court identification of a defendant by a witness whose pretrial identification of the defendant has been rendered invalid must have a basis independent of the pretrial identification, and the factors to be considered in determining whether the basis is independent include prior relationship with or knowledge of the defendant, the witness's opportunity for observation during the commission of the crime, the length of time between the offense and the identification, accuracy or discrepancies in the pre-lineup description and the defendant's actual appearance, any previous proper identification or failure to identify the defendant, identification of another person as the perpetrator of the crime prior to the pretrial identification, the nature of the offense, the physical and psychological state of the witness, his age and intelligence, and any idiosyncratic or special features of the defendant.

3. CRIMINAL LAW — EFFECTIVE ASSISTANCE OF COUNSEL.

    A criminal defendant is entitled to a new trial where defense counsel did not perform at least as well as a lawyer with ordinary training and skill in the criminal law, did not conscientiously protect the defendant's interests undeflected by conflicting considerations, or made a serious mistake without which the defendant would have had a reasonable likelihood of acquittal.

4. CRIMINAL LAW — MOTIONS — DIRECTED VERDICTS.

    A trial court, where ruling on a motion for a directed verdict of acquittal in a criminal case, must consider evidence presented by the prosecution up to the time of the motion in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

5. CRIMINAL LAW — GUILTY KNOWLEDGE.

    A defendant's knowledge of the criminal nature of his acts need not be proven directly but may be inferred from other facts and circumstances.

6. Appeal — Jury Instructions.
   Jury instructions must be read as a whole on appeal and not extracted piecemeal in an effort to establish error requiring reversal.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Lynn Chard,* Assistant State Appellate Defender, for defendant on appeal.

Before: D. C. Riley, P.J., and D. E. Holbrook, Jr., and M. B. Breighner,* JJ.

Per Curiam. In this case defendant appeals as of right from his conviction by a jury of receiving or concealing stolen property over the value of $100, MCL 750.535; MSA 28.803.

Eugene Woods, the owner of a 1977 Chevrolet pickup truck, testified that on March 8, 1978, at about 5:40 a.m., he parked the vehicle in his employer's parking lot. Approximately ten minutes later, he was informed that the truck was gone. After his own investigation confirmed that fact, he reported the disappearance to the police.

About 3:30 p.m. that same day, Highland Park police officers Edwin Ostrand and Tyrone Foster drove to 154 West Buena Vista in Highland Park after receiving a radio report of "auto strippers in a garage" at that location. Officer Ostrand proceeded to the garage itself on foot and observed three men working on a Chevrolet pickup truck. One person was removing the front bumper while the other two leaned into the engine compartment from the sides of the vehicle. When Ostrand iden-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tified himself and ordered the subjects to freeze, they all ran. Officer Ostrand gave chase and radioed descriptions to other officers. An hour and a half later, Officer James Francisco observed defendant walk up to the Buena Vista address. Because defendant fit one of the radio descriptions, Francisco detained him until Officer Ostrand returned to the scene. Ostrand identified defendant as one of the persons seen stripping the truck. Eugene Woods verified that the truck was the same one reported missing earlier in the day.

Defendant initially argues that this identification procedure violated his constitutional right to counsel. He further contends that his defense attorney's failure to object to Officer Ostrand's identification testimony at trial evidences a denial of effective assistance of counsel.

Generally, once a suspect is in custody, there is a right to counsel during any corporeal identification procedure. *People v Anderson,* 389 Mich 155, 180-187; 205 NW2d 461 (1973), *People v Jackson,* 391 Mich 232, 337-340; 217 NW2d 22 (1974). An exception to this rule is that an on-the-scene identification necessary to determine whether a suspect should be formally arrested may take place without counsel. *People v Dixon,* 85 Mich App 271, 279-281; 271 NW2d 196 (1978), *Russell v United States,* 133 US App DC 77; 408 F2d 1280 (1969). Such identification is considered a reasonable police practice which helps expedite the release of innocent suspects. For this reason, the exception does not apply where the police clearly suspect that the person held committed the crime. *Dixon, supra,* 281.

The justification for an on-the-scene identification was met in this case. When defendant was detained, the police did not have more than a

mere suspicion that he was involved with the crime. The description broadcast was a general one, indicating race, sex, height, and clothing of the suspect, and could have fit numerous persons within the area. The officers at the scene had good reason to call Officer Ostrand back to the location to observe defendant. Although the identification was not literally within minutes of the offense, it did occur relatively soon afterwards.

Further, the danger of misidentification was less in this case than in other on-the-scene situations. Generally, when a victim or civilian witness views a suspect at the scene, the suspect is handcuffed and surrounded by police. This may create a somewhat prejudicial atmosphere in that the suspect looks like an offender. Here, the identification was made by another police officer, who would be less prone to allow such circumstances to detract from his observation skills. We are convinced that the on-the-scene identification of defendant was proper despite the absence of counsel.

In any event, defendant was not prejudiced since it was certain that Officer Ostrand had a basis for his trial identification of defendant independent of the on-the-scene procedure. *People v Kachar,* 400 Mich 78; 252 NW2d 807 (1977). Those factors relevant to the existence of such an independent basis are:

"1. Prior relationship with or knowledge of the defendant.

"2. The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise or other factor affecting sensory perception and proximity to the alleged criminal act.

"3. Length of time between the offense and the disputed identification * * *.

"4. Accuracy or discrepancies in the pre-lineup or showup description and defendant's actual description.

"5. Any previous proper identification or failure to identify the defendant.

"6. Any identification prior to lineup or showup of another person as defendant.

"7. Still another consideration, not mentioned in [*United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967)], but essential to a determination of judging the reliability of the witness's perceptions is the nature of the alleged offense and the physical and psychological state of the victim. 'In *critical situations* perception will become distorted and any *strong* emotion (as opposed to mildly emotional experiences) will affect not only what and how much we *perceive,* but also will affect our *memory* of what occurred.' 389 Mich 211. (Emphasis in original.)

"Factors such as '*fatigue, nervous exhaustion, alcohol and drugs*', 389 Mich 213 (emphasis in original), and age and intelligence of the witness are obviously relevant. Levine and Tapp, *The Psychology of Criminal Identification: The Gap from Wade to Kirby,* 121 U Pa L Rev 1079, 1102-1103 (1973).

"8. Any idiosyncratic or special features of defendant." *Id.,* 95-96.

Here, while Officer Ostrand had no prior relationship with defendant, his opportunity to observe was sufficient. He stated that he viewed defendant for four or five seconds from a distance of from 15 to 20 feet before giving chase. It was daylight, and he was able to see defendant's face. The on-the-scene identification took place within an hour and a half, and there was no evidence of dehabilitating factors such as fatigue, nervous exhaustion, alcohol, or drugs. Further, the officer, as a trained observer, was not likely to have been affected adversely by the stress inherent in the situation. *Cf. United States v Butler,* 405 F2d 395, 396 (CA 4, 1968). Finally, there was no evidence of

a previous failure to identify defendant or the erroneous identification of another person.

Because the identification of defendant was proper, counsel's failure to move for suppression was not a decisive error evincing ineffective representation. A defendant is entitled to a new trial if counsel did not perform "at least as well as a lawyer with ordinary training and skill in the criminal law" and did not conscientiously protect his client's interests undeflected by conflicting considerations. *People v Garcia,* 398 Mich 250, 264; 247 NW2d 547 (1976). Further, defense counsel must not have made a serious mistake without which defendant would have had a reasonable likelihood of acquittal. *Garcia, supra,* 266, *People v Degraffenreid,* 19 Mich App 702, 718; 173 NW2d 317 (1969). Defense counsel's failure to move for suppression reasonably cannot be seen as having denied defendant the likelihood of acquittal.

Defendant also argues that trial counsel was remiss in failing to object to testimony regarding the radio report received by Officers Ostrand and Foster. Officer Foster testified that the report was of "male subjects stripping a vehicle".[1] The content of an informant's tip generally is inadmissible as hearsay. Admission is not justified for the purpose

---

[1] "*Q.* Did you have occasion to go to the area of 154 West Buena Vista?

"*A.* We did, sir.

"*Q.* And is that in the City of Highland Park?

"*A.* Yes, sir.

* * *

"*Q.* Were you in uniform and a marked scout car?

"*A.* I was in uniform and a marked scout car.

"*Q.* What, if anything, did you do after you got there?

"*A.* We received a run on male subjects stripping a vehicle at that location. We pulled up in front of 151 Tyler, I let my partner out, he went between the houses at 151 Tyler, going southbound to the northwest Buena Vista alley."

of showing an officer's state of mind, since the state of mind is not relevant. Therefore, testimony of radio reports should be limited to a statement that the officer was responding to a tip. *People v Wilkins*, 408 Mich 69; 288 NW2d 583 (1980). In *Wilkins*, the testimony revealed an informant's statement that pointed to the defendant's guilt of carrying a concealed weapon:

"*Q.* Now, Officer Lutz, what did the informant tell you?

"*A.* I was informed at 8 o'clock p.m. that evening that a black male, late twenties, wearing a gray suit, would be in a gray Cadillac '75 sedan, license George Paul X-ray 233. He was supposed to be at 14009 Mendota, and that he's carrying a gun, informant seen that gun with him earlier in the evening." *Id.,* 71-72.

The testimony in the instant case is readily distinguishable. The brief reference to "male subjects stripping a vehicle" did not point directly to defendant's guilt. Since Officer Ostrand testified regarding his own observations of the three men, little prejudice is apparent. While an objection may have limited the testimony to the fact that a tip was received, such a limitation hardly would have afforded defendant a reasonably likely chance of acquittal. Defendant was not denied effective assistance of counsel.

Defendant also argues that the trial court erred in denying his motion for a directed verdict. At the close of the prosecution's case, defense counsel argued that there was no proof that defendant was aware that the truck was stolen. *People v Tantenella,* 212 Mich 614, 619; 180 NW 474 (1920). The standard for ruling on a motion for directed verdict was set forth in *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979).

"In summary, the trial judge when ruling on a mo-

tion for a directed verdict of acquittal must consider the evidence presented by the prosecution up to the time the motion is made *[People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976)], *People v Vail,* 393 Mich 460, 463; 227 NW2d 535 (1975), and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt, *Jackson, supra,* p 319."

Guilty knowledge need not be proven directly but may be inferred from other facts and circumstances. *Tantenella, supra.* At the time of defendant's motion, the prosecutor had presented evidence that the truck was stolen on the day of the offense charged. Defendant and the others were observed dismantling the vehicle, as opposed to repairing it. The door locks were jammed, and the ignition system was broken. Finally, when Officer Ostrand identified himself, defendant fled. From these facts a rational trier of fact could have inferred beyond a reasonable doubt that defendant knew that the truck was stolen.

Defendant's final argument on appeal is that the trial court erred by omitting portions of the standard jury instructions relating to reasonable doubt, the presumption of innocence, and the prosecution's burden of proof. Although the record reveals that certain portions of the instructions dealing with those concepts were inadvertently omitted, prejudicial error did not occur. Jury instructions must be read as a whole and not extracted piecemeal in an effort to establish error requiring reversal. *People v Choate,* 88 Mich App 40, 45; 276 NW2d 862 (1979). The concepts of reasonable doubt, the presumption of innocence, and the burden of proof were related to the jury by a reading of CJI 3:1:02, 3:1:03(2), and 3:1:05. Defendant's claim of instructional error is therefore without merit.

Affirmed.