[Crim. No. 161.  Third Appellate District.—May 10, 1911.]

## Ex Parte JAMES HAYTER on Habeas Corpus.

CRIMINAL LAW—DEMURRER SUSTAINED TO INFORMATION—EXPRESSION
OF COURT'S OPINION — ABSENCE OF ORDER — FURTHER PROCEEDINGS
NOT ALLOWED.—The mere expression of an opinion by the court
upon sustaining a demurrer to an information for failure to state
an offense under the statute that "the defect in the information
might be corrected" is not, within the contemplation of section 1008
of the Penal Code, a direction or order to the district attorney to
file an amended information or to otherwise proceed against the
accused, in the absence of which no further proceedings can be
allowed.

ID.—ORDER, IF MADE, MANDATORY.—If an order should be made by the
court requiring the district attorney to proceed further with the
prosecution, it would be mandatory upon the district attorney to
obey the order made, and his failure to obey it would involve a
violation of duty, for which he could be removed from office or
otherwise punished.

ID.—ORDER WHEN REQUIRED—OFFENSE OR JURISDICTION NOT SHOWN.—
An order of court is required under section 1008 of the Penal
Code, where the information or indictment states no offense, or
shows no jurisdiction in the court, and it cannot be limited to any
mere inartificiality in the pleading.

ID.—VITAL REQUIREMENT OF STATUTE.—The vital requirement or *grava-
men* of the statute is that in order to confer upon the district at-
torney the power to continue with the prosecution of a charge which
he has failed to state in the indictment or information, to which,
for some reason, a demurrer has been sustained, he must, as an
indispensable condition of his right so to proceed, first receive from
the court express authority to do so, under an order of the court
upon which such authority must depend.

ID.—STATUTORY BAR TO FURTHER PROSECUTION.—If the court elects not
to order the district attorney to proceed further or fails to do so,
then the bar attaches to a further prosecution by the very terms
of the statute itself, which, under section 1008 of the Penal Code,
may be appropriately termed a statutory bar to further prosecu-
tion; or it may be considered a "statutory jeopardy," as distin-
guished from a "common-law jeopardy."  It is, in brief, a bar merely
and solely because the legislature has said so.

ID —PROSECUTION AT END—DISCHARGE OF PRISONER UPON HABEAS COR-
PUS.—The prosecution being at an end under the terms of sections
1008 and 1009 of the Penal Code for failure of the court to make the

required order to justify further proceedings, it follows that the prisoner is entitled to be discharged upon a writ of *habeas corpus*.

Id.—Writ of Habeas Corpus a Proper Remedy—Remedy by Appeal not Required.—The writ of *habeas corpus* is the proper remedy for the release of a person wrongfully restrained of his liberty after demurrer sustained to an information, though a new information has been filed against him under no authority therefor; and he is not required to avail himself, in such case, of the remedy by appeal after trial under such unauthorized information.

PETITION for discharge upon writ of *habeas corpus* after demurrer sustained to an information in the Superior Court of Merced County. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

B. F. Fowler, for Petitioner.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

HART, J.—The petition alleges that, on the twenty-sixth day of October, 1910, a complaint was filed in the justice's court of township No. 2, in the county of Merced, jointly charging the petitioner and one Walter Hayter with the crime of obtaining property from one A. Dastrevigne by false and fraudulent representations. A warrant was thereupon issued by the magistrate, and, on the fifth day of November, 1910, said warrant was served on the petitioner, who was brought before said magistrate, by whom petitioner was, on the fifteenth day of December, 1910, preliminarily examined on said charge and an order made holding him to trial in the superior court of said county. Upon said order the district attorney, in due time, filed an information, thereby attempting to inform against petitioner for the crime for which he was ordered held by the magistrate.

After several postponements of the matter the defendant appeared for arraignment upon the information thus filed on the twenty-third day of January, 1911. The petitioner moved to set aside said information on certain statutory grounds. This motion was denied by the court, and thereupon the petitioner interposed to the information a demurrer,

which, after argument, was, on the twenty-eighth day of January, 1911, ordered sustained by the court.

The order sustaining the demurrer reads as follows: "The demurrer to the information herein having been heretofore argued and submitted is now ordered sustained."

The petition further alleges that immediately upon the making of the foregoing order sustaining the demurrer the clerk of said court entered the same upon the minutes of said court "in the minute-book kept by said clerk for recording the proceedings had in said court in such matters as come before said court."

Immediately after the making of said order sustaining said demurrer, the petition proceeds, "as the defendant, James Hayter, petitioner herein, was leaving the courtroom of said court, he was arrested by the sheriff of said county, without any warrant of arrest being read to him, by order and direction of the district attorney of said county, and immediately taken to and confined in the county jail of said county, wherein he is now and has ever since been confined and restrained of his liberty."

The petition discloses that, on the afternoon of the day on which the court made the order sustaining the demurrer to said information, and after the petitioner had been rearrested as described, the district attorney caused another complaint to be verified and filed with said justice's court of township No. 2, charging the petitioner with the identical offense for which he was informed against by the information to which, as explained, a demurrer was sustained.

The petitioner, claiming, as he does here, that, since the court, at the time of making the order sustaining the demurrer to the information referred to, did not "direct a new information to be filed," as required by section 1008 of the Penal Code, the action of the district attorney in causing him to be rearrested and proceedings *de novo* taken and had before the magistrate upon a complaint filed before said magistrate accusing him of the identical offense with which he was charged by the information that fell under the force of a demurrer, was in excess of his authority and jurisdiction, under the terms of the section of the code just mentioned, petitioned the superior court of Merced county for his restoration to liberty through a writ of *habeas corpus*. The petition

for said writ, as here, stated, as the ground upon which petitioner claimed the right to his release from imprisonment, that, upon sustaining the demurrer to the information, the court did not make an order directing the district attorney either to file a new information or otherwise to proceed *de novo*, as required by the statute, against the defendant upon the charge alleged against him in said information. Said writ was granted and made returnable before said superior court on the second day of February, 1911, at 5 o'clock P. M.

Argument upon the petition for said writ was had on the third day of February, 1911, and it appears that the court took the matter, after its submission, under advisement.

On the twenty-fifth day of February, 1911, the matter of petitioner's application to be discharged from custody being still undecided, the court made an order correcting its minutes of the proceedings had on the twenty-eighth day of January, 1911, on which date the demurrer to the said information was sustained. The proceedings by which said minutes were corrected are recorded as follows in the minute-book kept by the clerk of said court:

"Whereas, the minutes of the superior court of Merced County, State of California, for the 28th day of January, 1911, in the Matter of the Application of James Hayter and Walter Hayter for a writ of *habeas corpus* read as follows: '*People* vs. *James Hayter and Walter Hayter,* No. 630. January 28th, 1911. The District Attorney, the defendant, James Hayter and his counsel, B. F. Fowler, Esq., appear in court. The demurrer to the information herein, having been heretofore argued and submitted, is now sustained.' And, whereas, said minutes do not fully set forth the actions and judgment of said court had in said matter, said minutes are amended to read as follows: '*People* vs. *James Hayter and Walter Hayter,* No. 630. January 28th, 1911. The District Attorney, the defendant and his counsel, B. F. Fowler, Esq., appear in court. The demurrer to the information having been heretofore argued and submitted, the court expressed the opinion that the demurrer should be sustained, and it is so ordered, and the court also expressed the opinion that the defect in said information existing through failure to set forth the intent to defraud might be corrected by properly setting forth said intent in a new information.' "

The minutes disclosing the foregoing correction of the order sustaining the demurrer also show that at the time said correction was made the district attorney declared that "he intended to file immediately a new information and to proceed further against the said James Hayter by issuance of new process." It also appears from said last-mentioned minutes that counsel for petitioner "requested the court to discharge the prisoner" upon the showing made on the application for the writ of *habeas corpus* theretofore issued by said court; but that "the district attorney objected to the making of such order, stating that he intended to file a new information, and the court, upon the objection of the district attorney, refused to order the discharge of the petitioner in order that said new information might be filed."

Thereafter, the petitioner was preliminarily examined on the second complaint filed before the magistrate, charging him with the crime which was attempted to be stated against him in the first information, and for which he was originally or in the first instance held to trial. Thereafter the magistrate again examined the charge against petitioner, and thereupon made an order holding him to trial upon said charge, and the district attorney subsequently filed an information against petitioner upon the order so made.

Upon the record as disclosed by the foregoing recital of the history of the proceedings by which he is restrained of his liberty, the petitioner contends that he is entitled to be restored to freedom, and we think that it is very clear that there is no alternative left to this court but to sustain his contention.

Section 1008 of the Penal Code reads as follows: "If the demurrer is allowed, the judgment is final upon the indictment or information demurred to, and is a bar to another prosecution for the same offense, unless the court, being of the opinion that the objection on which the demurrer is allowed may be avoided in a new indictment or information, directs the case to be resubmitted to the same or another grand jury, or directs a new information to be filed; provided, that after such order or resubmission, the defendant may be examined before a magistrate, and discharged or committed by him, as in other cases."

The succeeding section provides that "if the court does not permit the information to be amended, nor direct that an

information be filed, or that the case be resubmitted, as provided in the preceding section, the defendant, if in custody, must be discharged, or if admitted to bail, his bail is exonerated, or if he has deposited money instead of bail, the money must be refunded to him.''

Whether, in point of fact, the court failed, as the petition charges, to direct the district attorney to proceed further against the petitioner by any of the modes prescribed by section 1008 of the Penal Code at the time it made its order allowing the demurrer is unimportant, since, in our opinion, even the *nunc pro tunc* proceedings by which the minutes of the proceedings of the court sustaining the demurrer were corrected fail to disclose that the court made an order, as required by said section, investing the district attorney with authority either to amend the information or to cause to be re-examined before a magistrate the charge attempted to be alleged in the defective information against the petitioner.

According to the minutes of the court as corrected, the court, upon sustaining the demurrer, merely expressed the opinion that "the defect in said information *might be corrected,*" but nowhere is there any language to be found in said corrected minutes indicating that the court *directed* or intended to direct the district attorney to amend the information or to proceed *de novo* before a magistrate or otherwise to proceed further against the petitioner upon the charge attempted to be stated against him in said information.

Obviously, the mere expression of an opinion by the court that "the defect in the information *might* be corrected" is not, within the contemplation of section 1008 of the Penal Code, a direction to the district attorney to file an amended information or to otherwise proceed further against the accused. The statute requires more than that. In addition to the entertainment and expression of an opinion by the court that "the objection on which the demurrer is allowed may be avoided in a new indictment or information," the code section makes it requisite, in order to authorize the district attorney to proceed with the prosecution of the accused for the "same offense," that the court make an order directing that official to so proceed against the defendant.

In *Ex parte Williams,* 116 Cal. 512, [48 Pac. 499], the court below sustained a demurrer to the information, "with

leave to the district attorney to file a new information."
Holding that under such an order the district attorney was
without the power or right to proceed further against the ac-
cused for the offense charged in the information to which
the demurrer was sustained, the supreme court says: "It
cannot be held, therefore, that the order here given is equiva-
lent to the order which the statute contemplates should be
made. The 'leave' given to a party to file an amended plead-
ing after demurrer sustained is never an order or direction to
the party that he must file such pleading. As the only order
which the court could properly make was an order directing
a new information to be filed, and as the order in fact made
by the court cannot be considered to be equivalent thereto, it
follows, under sections 1008 and 1009 of the Penal Code, that
the prosecution is at an end and that the prisoner must be
discharged."

In the case at bar the language of the court, as evidenced
by the corrected minutes of the proceedings in which the de-
murrer was allowed, does not even disclose a permissive order
or such an order as is held in *Ex parte Williams* to be insuffi-
cient, under the terms of section 1008, to confer upon the dis-
trict attorney the authority to proceed further against the
prisoner for the offense with which he was charged or at-
tempted to be charged by the defective information. Indeed,
as we have seen, there was no order, nor anything approxi-
mating an order, but simply an expression of the opinion of
the court that the defect could be corrected or avoided in a
new information. Of course, if section 1008 of the Penal
Code means anything at all, there was a total failure on the
part of the court, even if it intended to do so, to make such
an order as is absolutely essential to the justification of the
proceedings taken in this case by the district attorney after
the order sustaining the demurrer was made.

But it is earnestly contended by the attorney general that
the mandates of section 1008 of the Penal Code have no appli-
cation to a case where a demurrer is sustained to an informa-
tion which, as in this case, does not state any offense what-
soever. The argument is that it is only where the accused
is placed in jeopardy, in the common-law sense of that term,
that the section becomes operative or has application, and
that the original information here having altogether failed

to state any offense, the petitioner was never in jeopardy, and that, therefore, the district attorney was authorized to proceed further against the accused without an order by the court directing him to do so. This precise point, so far as we are advised to the contrary, has never before arisen in this state, and, while there is language in a New York case (*People v. Rosenthal*, 197 N. Y. 401, [90 N. E. 991]) which appears to lend some support to the position of the attorney general, we are not inclined to assent to that construction of section 1008 of the Penal Code.

The section of the New York Criminal Code with respect to the subject with which we are dealing is in language precisely the same as that of our section 1008. In the case cited the court says: "By the express command of the statute a judgment sustaining a demurrer is a bar to a further prosecution for the same offense unless such an order is made. *No order to resubmit is required, however, unless the defendant has been put in jeopardy under a former indictment.*"

From the language italicized in the foregoing excerpt from the opinion, it is argued that unless the indictment or information states a public offense, section 1008 does not require that an order directing the district attorney to proceed further against the accused shall be made by the court as a prerequisite to the right or authority of the prosecuting official to so proceed.

As stated, the language referred to seems to be susceptible of the interpretation given it by the attorney general, although it is not clear to us that such was the meaning intended. The first part of the quotation appears to hold that, by virtue of the statute itself, without regard to whether the pleading states or simply attempts but fails to state a crime, a further prosecution of the accused upon the charge stated or attempted to be stated is barred in the absence of an order by the court, at the time of the making of the order allowing the demurrer, directing the district attorney to resubmit the case to the same or another grand jury. And we think, as stated, such to be the proper construction and true meaning of our statute. In other words, we are of the opinion that the question of common-law jeopardy does not arise here. The sole question propounded is, whether the legislature intended, by the enactment of section 1008, to place it with

the court in any case where a demurrer to a criminal pleading
has been sustained to say whether the charge designated in
the defective pleading shall or shall not be further prosecuted
by the district attorney. In our opinion, the statute can
mean nothing else without being absolutely purposeless.

We are unable to think of any occasion when there would
arise a case to which section 1008 of the Penal Code would be
applicable if the contention of the attorney general were
maintainable. We can conceive of very few cases in which a
demurrer to an indictment or an information would be prop-
erly allowable where sufficient facts were stated to constitute
a public offense. Indeed, we can now recall but three grounds
upon which a demurrer would be sustainable in a case where
the accusatory pleadings stated a public offense according to
the rules of criminal pleading, viz.: 1. Where, upon the face
of the pleading, it appears that the court is without jurisdic-
tion because of the improper laying of venue or discloses
that the place of the commission of the offense was outside
or beyond the territorial jurisdiction of the court in which
the pleading has been filed; 2. Where it appears from the
face of the pleading, that the statute of limitations has barred
a prosecution of the accused for the offense charged; 3.
Where, possibly, an act might be denounced as a crime for
which no penalty has been provided. But, obviously, section
1008 of the code can have no reference or application to such
cases, for, where a demurrer is sustained either on the ground
that the venue of the crime was not within the territorial
jurisdiction of the court in which the accusatory pleading
has been filed or on the ground that the statute of limitations
has barred a prosecution of the accused for the crime therein
charged, or on the ground that no penalty is prescribed for
the act denounced as a crime, the court would have no legal
right or jurisdiction to make the order, authorized by section
1008 of the Penal Code, directing the district attorney to
proceed further against the accused. In all those cases there
would, manifestly, be no other course for the court to pursue
but to dismiss the indictment or information and order the
discharge of the prisoner. But, if it be suggested that the
section is intended to apply to cases where the demurrer is
addressed, not to the sufficiency of the facts stated to disclose
a public offense, but to the inartificiality of the pleading, as,

for instance, that its averments are ambiguous or uncertain or unintelligible, the reply is that it so rarely happens that such an objection is made to a criminal pleading, except where an objection on those grounds in effect goes to the extent of challenging the sufficiency of the averments to state a public offense (in which case· we are brought back to the original proposition that no offense is stated at all, and, therefore, according to the attorney general, the section does not apply) that it is inconceivable that the legislature intended to limit the application of the statute to such cases only. It may safely be declared that, where an information or indictment is not bad for want of facts or states a public offense,· no demurrer would be interposed and much less allowed merely because such facts are not stated with the technical nicety which should, of course, characterize such a pleading. If the offense is stated in such manner as to inform the defendant of the precise crime with which he is charged, and the time and place of its commission, it is sufficient even if the statement of facts is not strictly in accord with a thoroughly scientific conception of criminal pleading.

There being, then, practically no cases to which the statute can apply except those in which the demurrer has been sustained on the ground that the pleading does not·charge a public offense, and if it does not apply to the latter class, what is the meaning of sections 1008 and 1009 of the Penal Code? What did the legislature intend to accomplish by their enactment? Of course, it must be conceded that they were placed upon our statute books for some purpose, for it cannot, of course, be assumed that the legislature thus labored with no specific object in view or no particular purpose to subserve.

The vital requirement, or, if we may use the expression in this connection, the *gravamen* of the statute, is, in our opinion, that, in order to confer upon the district attorney the power to continue with the prosecution of a charge, which he has failed to state in the indictment or information, to which, for such reason, a demurrer has been sustained, he must, as an indispensable condition to his right to so proceed, first receive from the court, the sole source of the power from which he may derive the right to proceed, express authority to do so; that, in other words, the district attorney's

right to go on with the prosecution of the charge, under the circumstances indicated, solely depends upon and proceeds from the order of the court, as much so as the right to do any other act which can be done only on·an order of the court must depend upon such an order. If the court elects not to order the district attorney to proceed further, then the bar attaches by the very terms of the statute itself. The bar contemplated by section 1008 of the Penal Code, in other words, is what may appropriately be termed a statutory bar, somewhat analogous, in the principle upon which it operates, to the statute of limitations, or it may, with no impropriety, be called, in contradistinction to the common-law jeopardy, a "statutory jeopardy," resting, however, as is obvious, upon conditions or consisting of elements which are purely of statutory or legislative creation, different and distinct from and having no relation to those conditions which must be present in common-law jeopardy, as that doctrine is defined by and appropriated to others of our code sections. It is, in brief, a bar merely and solely because the legislature has said so. Of course, no one will dispute the power of the legislature to provide that any conditions which may arise in a criminal case may operate as a bar to a second or further prosecution of the charge preferred against the accused, regardless of whether jeopardy, in the common-law sense of that term, arises and attaches or not.

The theory upon which this legislation proceeds is, as declared in *Ex parte Williams,* 116 Cal. 512, [48 Pac. 499], that the legislature deemed it the wisest plan to vest in the court and not in the district attorney the discretion of deciding whether, under the circumstances pointed out by the statute, the district attorney shall proceed further against the accused for the same offense named in the pleading to which a demurrer has been sustained. The reason for this is, it seems to us, obvious. On the one hand, while the district attorney, clothed with such discretion, might allow his partisanship (for, like all lawyers, a partisan in litigation he is) to lead him to an unjust harassment of the accused, on the other hand, he might, having such discretion, refuse to proceed further in a case which ought to be prosecuted. The court, to which this discretion is wisely committed, is not a partisan. Its duty is to view both sides fairly and impar-

tially. It may familiarize itself with the facts so as to fairly decide whether the prosecution of the charge should or that it should not be pressed after demurrer sustained to the first or, it may be, the second indictment or information. Its order to the district attorney to proceed further is mandatory upon that official, and failure to obey the order thus made would involve a violation of duty on the part of the prosecuting official for which he could be removed from office or perhaps otherwise punished. (*Ex parte Williams,* 116 Cal. 512, [48 Pac. 499].)

That the construction of section 1008 here given is the true one, we think the language of the statute itself clearly bears out, for, it will be noted, the language is, "if the demurrer is allowed, the judgment is *final upon the indictment or information demurred to.*" The language, it will thus be seen, is not, "if the demurrer is allowed the judgment is final upon the *offense stated.*" To all intents and purposes, undoubtedly, in contemplation of said section, the document or instrument upon which the accused is arraigned is no less than what it purports to be—i. e., either an *indictment* or an *information*—up to the very point at the least where the court sustains a demurrer thereto, and the judgment which follows and becomes final, unless the order to the district attorney which it is in the discretion of the court to make accompanies the order sustaining the demurrer, is intended to act and operate upon the information or indictment in the form in which it appeared before and at the very time of the making of the order sustaining the demurrer.

But we are not altogether without authority for the views here declared concerning the meaning of section 1008 of the Penal Code.

In the case of the *State* v. *Crook,* 16 Utah, 512, [51 Pac. 1091], the defendant, having been informed against for the crime of abortion, demurred to the information "upon the ground that the facts shown therein did not constitute a public offense." The court sustained the demurrer and thereupon ordered the discharge of the prisoner. A second information was, however, filed by the prosecuting attorney and the defendant tried and convicted thereunder. But the accused had, upon his arraignment upon said new information, in addition to the plea of not guilty, interposed a plea

of "former acquittal," alleging, "in specific terms, that he had previously been charged by information with the same identical felony and offense as is charged in this information; that his demurrer to said prior information for the same offense had been sustained by the court, and final judgment entered thereon; and that he had been acquitted and discharged by the court of and from said crime and charge." The defendant appealed to the supreme court from the judgment and order, and, reversing the cause, with directions to the trial court to discharge the accused, that court says:

"The defendant's plea of former acquittal of the same offense charged in the information, by the judgment of the court sustaining the demurrer, and ordering the defendant discharged, without making an order directing another information to be filed, or that the cause be submitted to the grand jury, was, under the facts shown, a sufficient plea of former acquittal, and a bar to a prosecution under the third information filed. The information to which the demurrer was sustained and the information upon which the defendant was tried stated the same identical offense. The identity of the parties was admitted. We are of the opinion that the instruction of the court to the jury, to the effect that the judgment of the court in sustaining the demurrer to the second information and discharging the defendant thereon, without an order directing another information to be filed, would not amount to an acquittal of the defendant on that information, and that the jury should so find, was error."

It may here be remarked that the section of the Utah code with respect to orders sustaining demurrers to informations and indictments and the duty of the court to direct the prosecuting attorney to proceed further as a prerequisite to that official's right to do so after demurrer sustained is in language precisely the same as that of our section, and it will be noted that that case, as to the facts, is strikingly similar in all essential respects to the case at bar. The effect of the ruling there, as is the result arrived at here, is that the statute, *ex vi termini,* operates as a bar where the court, regardless of whether the accusatory pleading states an offense or not, after demurrer sustained, has omitted to direct the district attorney to proceed further with the prosecution of the charge named in the information to which the demurrer was sus-

tained. In that case, as here, no offense was stated, but the court held, from the crime named in the first information and the facts stated in connection therewith, such as the time and place of the commission of the designated crime and the names of the witnesses inserted on the back of the information, etc., it appeared that the new information charged the identical offense designated and attempted to be set forth in the original information, and the condition so disclosed was sufficient to bring the case within the terms of the section of the Utah code, identical, as we have seen, in language, with section 1008 of our Penal Code.

We have examined the question under review from every conceivable angle, with the result that we are unable to discover any ground upon which a different construction of our statute can be justly arrived at. Any other conclusion would not only leave the statute without any practical meaning whatsoever, but would necessitate the insertion therein, by judicial construction, of language that it does not contain.

It has been suggested that the petitioner has an adequate remedy in the ordinary course of law and that, therefore, he should not be permitted to pursue this summary and extraordinary method of securing his discharge from custody. We do not agree to the proposition thus suggested. The case of *Ex parte Williams,* 116 Cal. 512, [48 Pac. 499], furnishes a precedent for the adoption of the writ of *habeas corpus* as a remedy for the release of a citizen restrained of his liberty under such circumstances as are present here.

The ultimate question submitted here is plainly one of jurisdiction. As we have seen, the further prosecution of the charge unsuccessfully sought to be alleged in the information is barred, under the terms of section 1008 of the Penal Code, by the failure of the court below to direct the district attorney to proceed further against the petitioner in any of the several ways pointed out by said section. It follows, therefore, that the district attorney is absolutely without legal authority to file a new or an amended information or an indictment, charging the same offense, that would confer jurisdiction upon the court to try the accused for said offense. The prosecution is just as completely at an end as if the petitioner had been tried on the charge and acquitted or convicted thereof by a jury, and, therefore, a trial of the accused for the crime at-

tempted to be stated in the information, which has become *functus officio* by the ruling on the demurrer, upon a new information charging the same offense would be in excess of the jurisdiction of the court, and while, of course, this question could be raised and adjudicated on appeal, where a plea in bar of the prosecution, based upon section 1008 of the Penal Code, had been interposed by a defendant, yet we have been shown no sound reason for remitting the petitioner to his remedy at law, when it is obvious that a verdict of guilty would necessarily have to be set aside. To require him to resort to his remedy by appeal would, likely, only be to force him to suffer imprisonment until his trial is had and, in case of conviction, until his appeal could be heard and determined, and all this as the result of a proceeding of which the court has no jurisdiction. Moreover, to require him to go to trial would necessitate the entailment of an unnecessary and no insignificant expense upon the taxpayers of the county of Merced, a consideration which should have some weight in the determination of a question which, in point of fact, involves, in its solution, so far as its importance as a legal proposition is concerned, in this case at least, merely a decision as between "tweedle-dum" and "tweedle-dee."

The remedy by appeal is neither speedy nor adequate in a case where a citizen is restrained of his liberty under an illegal process. Where one is unlawfully imprisoned and it may be made so to appear to a court in an appropriate legal proceeding, there can exist no conceivable reason why he should not be restored to his liberty by the shortest cut recognized by the law, and not be compelled to remain in a county prison and thus be made to suffer the inconveniences of such restraint until some more dilatory remedy, which may ultimately be available to him, has been put in operation. (See *Terrill* v. *Superior Court* (Cal.), 60 Pac. 38.)

We think the petitioner, for the reasons stated in this opinion, is being restrained of his liberty without legal right, and he is, therefore, discharged from custody.

Chipman, P. J., and Burnett, J., concurred.