PEOPLE v McLOTT

PEOPLE v GROSS

1. RECEIVING STOLEN GOODS—CONSPIRACY—EVIDENCE—IDENTITY OF
   STOLEN GOODS—PRELIMINARY EXAMINATION.
   Testimony at a preliminary examination by two persons that·
   they had observed the loading of a trailer and inventoried the
   goods and subsequently examined the trailer at the defendant's
   warehouse and identified the goods therein as those that they
   had observed being loaded was sufficient evidence of the iden-
   tity of the goods, which had been stolen, to justify binding the
   defendants over for trial on charges of conspiring to receive
   and conceal stolen property and receiving and concealing stolen
   property.

2. RECEIVING STOLEN GOODS—EVIDENCE—POSSESSION OF STOLEN
   GOODS—KNOWLEDGE.
   Possession and use of stolen merchandise, near in time to its
   misappropriation, is some evidence that those in possession
   acquired it with knowledge that it was stolen.

3. RECEIVING STOLEN GOODS—EVIDENCE—KNOWLEDGE—PRELIMINARY
   EXAMINATION.
   Evidence presented at a preliminary examination was sufficient
   to warrant a magistrate in finding that two defendants had
   acquired property knowing it to be stolen and in binding the
   defendants over for trial where they were found with the

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 62 Am Jur 2d, Pretrial Conference and Procedure § 15.
    66 Am Jur 2d, Receiving and Transporting Stolen Property §§ 19 *et
    seq.,* 26.
[2, 3] 66 Am Jur 2d, Receiving and Transporting Stolen Property § 25.
[4] 53 Am Jur, Trial § 336.
[5, 6] 53 Am Jur, Trial § 511.
[7, 8] 5 Am Jur 2d, Arrest §§ 24, 31, 44 *et seq.*
    68 Am Jur 2d, Searches and Seizures §§ 41, 42, 88.
[9] 5 Am Jur 2d, Arrest § 73.
[10] 66 Am Jur 2d, Receiving and Transporting Stolen Property §§ 3,
    4, 34.

property shortly after it had been stolen, where one defendant had stated to the police that he did not have any paperwork pertaining to the goods and later at the police station ripped up a tally sheet which had been prepared by the shipper of the goods, and where the other defendant had made a patently false statement to the police that he had ordered the goods several days before.

4. CRIMINAL LAW—DIRECTED VERDICT—EVIDENCE—MATERIAL ELEMENTS OF OFFENSE.

A defendant's motion for a directed verdict was properly denied where there was some evidence, either direct or circumstantial, on each material element of the offense charged.

5. CRIMINAL LAW—INSTRUCTIONS TO JURY—ESSENTIAL ELEMENTS OF OFFENSE.

The trial court must instruct the jury as to all the essential elements of the crime charged, and the entire charge to the jury is considered in determining whether the court's instructions were proper.

6. CRIMINAL LAW—APPEAL AND ERROR—INSTRUCTIONS TO JURY—REQUESTED INSTRUCTIONS.

Failure of the trial court to give the jury an instruction requested by a defendant in the precise form sought is not reversible error where the substance of the requested instruction was given.

7. ARREST—PROBABLE CAUSE.

Probable cause for arrest existed where the arresting officer knew that a trailer loaded with auto parts had been stolen, the defendants were found unloading auto parts from a trailer matching the description of the one stolen, and the defendants had no bill of lading or other paperwork to indicate that their possession was rightful.

8. SEARCHES AND SEIZURES—PLAIN VIEW—PROPER ARREST.

A seizure was proper where the evidence was in the plain view of the police at the time they made a proper arrest and the evidence, consisting of a trailer which was backed up to a warehouse and boxes of auto parts both in the trailer and in the warehouse, was seized immediately upon the arrest of two defendants who were in the process of unloading the trailer.

9. SEARCHES AND SEIZURES—POSSESSION OF EVIDENCE—CONTROL OF EVIDENCE—REMOVAL OF PROPERTY—CONSTITUTIONAL LAW.

A seizure of evidence occurred when the police unequivocally

took possession and control of a warehouse and trailer containing stolen boxes of goods; the mere fact that, for practical reasons, the property was not physically removed until some later time is constitutionally irrelevant (US Const, Am IV).

10. RECEIVING STOLEN GOODS—SENTENCING—CONSECUTIVE SENTENCES.

There is no statutory authorization for the imposition of consecutive sentences for conspiring to receive and conceal stolen goods and the concealing and receiving of stolen goods.

Appeal from Oakland, Arthur E. Moore, J. Submitted Division 2 June 7, 1974, at Lansing. (Docket Nos. 16244, 16245.) Decided August 27, 1974.

Frederick J. McLott and Sidney R. Gross were each convicted of conspiracy to receive and conceal stolen property and of receiving and concealing stolen property. Defendants appeal. Affirmed and remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Robert C. Williams,* Chief Appellate Counsel, for the people.

*Bain & Shapero, P. C.,* for defendants.

Before: McGREGOR, P. J., and R. B. BURNS and O'HARA,* JJ.

McGREGOR, P. J. On December 7, 1972, the defendants were found guilty by a jury of conspiracy to receive and conceal stolen property, MCLA 750.157(a); MSA 28.354(1), and receiving and concealing stolen property, MCLA 750.535; MSA 28.803. The trial court sentenced both defendants

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

to consecutive sentences of three years and four months on each count, and they appeal as of right.

Factually, the record indicates that, on April 7, 1972, at 5:30 p.m., two police officers observed defendants in possession of a trailer containing nearly $200,000 worth of AC auto parts. The trailer was backed up to an open warehouse door at the Wolverine Expediters building. Defendant McLott was the owner of Wolverine Expediters, an auto parts company; defendant Gross was a salesman of the Wolverine Expediters. When the police arrived, Gross was observed with a box of AC auto parts, and defendant McLott was observed crouched in the truck. Gross stated that he was "in charge", while McLott stated that he had ordered the load "a couple days ago". The parts in question, however, had been destined for a General Motors Parts Division warehouse in Drayton Plains, from which they had been reported missing by General Motors at 2:30 p.m. that day.

The officers asked the defendants if they had a bill of lading or other paper work pertaining to the shipment; defendants replied that they did not. Defendants were then placed under arrest, along with a warehouse employee who was observed unloading AC parts from the trailer.

The arresting officer testified that the doors to the trailer and warehouse were open and that he observed AC parts in both places while standing outside. After defendants' arrest, the officer testified, the police "took control" of the building and the trailer. A uniformed officer was placed inside the building at all times; the goods inside the building and trailer were not removed for several days. Photographs were taken of the evidence inside the building; the physical evidence and the photographs were later admitted at trial, over

defense objections. While in the police station, defendant Gross ripped up a piece of paper, which was later determined to be a tally sheet prepared by the AC Spark Plug Division of General Motors in Flint. Additional facts will be presented as necessary in the discussion of the issues raised.

Defendants first argue that the trial court erred in failing to quash the information on the grounds that there was insufficient evidence adduced at the preliminary examination with respect to the identity of the goods and the defendants' knowledge that they were stolen to warrant binding them over for trial.

With respect to the identity of the stolen goods, this Court stated, in *People v Martinovich,* 18 Mich App 253, 257–258; 170 NW2d 899 (1969):

"Proof that the goods found in defendants' possession were the same as the goods alleged to have been stolen must be introduced to supply a basis for the findings of probable cause required of the magistrate at the preliminary examination."

Noting that none of the items found in defendants' possession were produced or identified by the complaining witness "at the examination as being his and having been stolen", this Court, in *Martinovich,* remanded for a new preliminary examination.

However, in the present case, two employees of the AC Spark Plug Division of General Motors testified at the preliminary examination that they observed the loading of the trailer in Flint and inventoried the goods. Subsequently, they examined the trailer in defendants' warehouse and identified the goods as being those that were loaded in Flint. This testimony serves to distinguish the present case from *Martinovich, supra,*

and is sufficient to support the trial court's finding with respect to the identity of the goods.

Defendants' assertion that the prosecution failed to adduce any testimony with respect to their knowledge that the goods were stolen is not borne out by the record. While it may be true, as defendants assert, that "mere possession" of stolen property is legally insufficient to support a finding that they acquired possession with the requisite *mens rea,* a good deal more than mere possession was shown by the prosecutor here. First, the defendants were discovered unloading the stolen merchandise only three hours after its theft was reported. Certainly, possession and use of the stolen merchandise, so near in time to its misappropriation, is some evidence that those in possession acquired it with knowledge that it was stolen. *Cf. People v Hutton,* 50 Mich App 351; 213 NW2d 320 (1973). Second, one of the police officers testified that defendant Gross stated that he had no bill of lading or other paper work pertaining to the goods he was unloading from the trailer. Nevertheless, at the police station, defendant Gross ripped up a tally sheet prepared by AC Spark Plug Division, which he had had in his pocket. Defendant Gross' false statements to the police, along with his action at the police station, are further circumstances indicating that he knew the property had been stolen at the time he obtained possession. Third, defendant McLott's statement to the police officers that he had ordered the load several days before was patently false, and also indicates that he knew his possession of the merchandise was unlawful. There were sufficient other facts and circumstances, in addition to defendants' possession of the stolen property, to warrant the magistrate finding that defendants acquired the prop-

erty with the requisite *mens rea* and binding them over for trial. *Cf. People v Tantenella,* 212 Mich 614; 180 NW 474 (1920).

Defendants' second argument—that the trial court erred in denying their motion at trial for a directed verdict—is premised on this same assertion, that nothing more than mere possession was shown and, hence, the necessary *mens rea* was not established. Since the testimony with respect to this issue at the preliminary examination and at trial was essentially the same, we need not discuss again the additional evidence tending to show that defendants received the stolen property with knowledge that it was stolen. Since there was some evidence, either direct or circumstantial, presented on each material element of the offense, defendants' motion for a directed verdict was properly denied. *People v Garcia,* 33 Mich App 598; 190 NW2d 347 (1971).

Defendants next argue that the trial court committed reversible error in refusing to give their requested instruction regarding guilty knowledge.

Defendants requested the following instruction:

"Mere possession of stolen property, standing alone and unconnected with any other circumstances, does not afford a presumption of guilt, and under such circumstances, the defendants' possession must be regarded as innocent, unless it is shown that they received the goods with knowledge that they had been stolen, or, under such circumstances as to justify you jurors finding that they possessed such knowledge at the time the goods came into their possession."

The trial judge declined to give the instruction requested because it would be "repetitious" but said that he would "give carefully the elements of the crime which includes the element of knowledge". Defense counsel then noted "I think any-

thing short of an instruction substantially to this wording would not do justice, would not clear the minds of the jury". Defense counsel reiterated his objection at the conclusion of the trial court's charge to the jury.

The trial court must instruct the jury as to all the essential elements of the crime. *People v Hooper,* 50 Mich App 186; 212 NW2d 786 (1973); *People v Miller,* 35 Mich App 627; 192 NW2d 517 (1971). Further, the entire charge is considered in determining whether the court's instructions were proper. *People v Mayberry,* 25 Mich App 677; 181 NW2d 616 (1970); *People v Thomas,* 7 Mich App 519; 152 NW2d 166 (1967).

In the present case, the trial court instructed the jury several times that guilty knowledge was an essential element of the crime. The court then detailed defendants' theories of the case and in particular, their contentions regarding the element of guilty knowledge. With respect to defendant Gross, the trial court stated:

"Mr. Gross contends that he had no knowledge of the parts or trailer or tractor, no knowledge that it had been stolen or of any fact which might cause him to suspect that it had been stolen. Thus, Mr. Gross contends that he is innocent accordingly."

With respect to defendant McLott, the trial court stated:

"Mr. McLott contends he is not guilty and he asserts the theory that the people have failed to bear their burden of proof with relation to the essential elements, primarily the element of knowledge. * * * This defendant contends that the case * * * as presented by the prosecution is merely circumstantial * * * and asserts that there was nothing unusual about the circumstances that would lead him to believe that the property was stolen."

Thereafter, the trial court thoroughly instructed the jury with respect to the weight and effect of circumstantial evidence. In particular, the court noted:

"But to justify the inference of guilt from circumstantial evidence the facts proven from which it is asked the guilt of the defendant be inferred, must be consistent with each other and must not only clearly point to his guilt but must be inconsistent with any other reasonable hypothesis upon which his innocence might be maintained."

In addition, the trial court properly instructed the jury with respect to the presumption of innocence and the prosecution's burden of proof.

It is clear from a thorough review of the trial court's instructions that the substance of defendants' requested charge was given. Thus, the failure of the trial court to give the requested instruction in the precise form sought is not reversible error. *People v Mayberry, supra,* and *People v Thomas, supra.*

Next, defendants argue that the trial court erred in denying their motion to suppress certain evidence. Specifically, it is contended that boxes of auto parts seized from the warehouse and trailer and photographs thereof, along with the tally sheet which defendant Gross attempted to destroy, were acquired by the police via an unconstitutional search and seizure and therefore, were inadmissible at trial. The search and seizure was improper, say defendants, because (1) their arrest was invalid due to the absence of probable cause, (2) the search and seizure of the evidence took place after the defendants had been arrested and taken from the scene, and (3) no warrant authorizing the search was issued.

Regarding the validity of the arrest, the record demonstrates clearly that the arresting officer was in possession, at the time of effectuating the arrest, of sufficient information to "create an honest belief in the mind of a reasonably prudent man that an offense ha[d] been committed and that the person[s] arrested committed it". *People v Gunn,* 48 Mich App 772, 777; 211 NW2d 84 (1973). Testimony adduced at the preliminary examination demonstrates that the arresting officer knew at the time of the arrest that (1) the Michigan State Police had reported the stolen truck—a Bancroft trailer No. 4505—loaded with AC parts, (2) that the defendants were found unloading AC auto parts from a trailer matching the description provided by the State Police, and (3) that the defendants had no bill of lading or other paperwork indicating that their possession was rightful. When considered in the aggregate, these facts more than constitute probable cause for effectuating defendants' arrest.

Having concluded that the arrest was proper, the remaining question is whether the subsequent seizure of the evidence was lawful.

When he arrived at the scene, the arresting officer observed boxes containing AC parts inside the open warehouse door and inside the open trailer which was backed up to the warehouse. Boxes of AC parts were observed prior to defendants' arrest. Immediately after defendants' arrest, the officer "seized the contents" of the trailer and the boxes inside the building. A uniformed officer was placed on guard in the building "until such time as he could remove the property". The arresting officer testified that it was not practical to remove the property immediately after the arrest and they were not so removed until several days

thereafter. Photographs of the boxes were also taken subsequent to the defendants' arrest and while the police were in control of the building.

In these circumstances, we hold that the seizure of the evidence in question was proper by virtue of the "plain view" doctrine. As our Supreme Court recently had occasion to note, the "seizure of objects within the plain view of an officer, lawfully in a place where he had a right to be, [is] not proscribed by the constitution". *People v Whalen,* 390 Mich 672, 677; 213 NW2d 116 (1973). In the present case, the officer was "lawfully in a place where he had a right to be" at the time he observed the parts in question. Upon arresting defendants, the police immediately "took control" of the premises, *i.e.,* seized the evidence. Defendants' argument that the evidence was not "seized" until it was removed a few days later is not well taken. Where, as here, it is clear that the police unequivocally take possession and assert dominion over physical evidence, it would be absurd to assert that a seizure thereof has not occurred for purposes of the Fourth Amendment. The mere fact that, for practical reasons, the police do not physically remove the property until some later time is constitutionally irrelevant.

The trial court properly denied defendants' motion to suppress the evidence in question.

Defendants' remaining contentions deal with the question of sentencing. Defendants contend, and the prosecutor agrees, that the trial court erred in ordering that their sentences, for conspiracy to receive and conceal stolen goods, and the concealing and receiving of stolen goods, run consecutively. Since there is no applicable statutory authorization for the imposition of consecutive sentences in this case, the trial court did err in failing to

direct that the sentences be served concurrently. *Browning v Michigan Department of Corrections,* 385 Mich 179; 188 NW2d 552 (1971). It is, therefore, necessary to remand for resentencing.

Defendants' objection to the failure of the trial court to allow them to examine their presentence reports at the time of sentencing is thus moot, for defendants will have the benefit of GCR 1963, 785.12 at such resentencing.

Convictions affirmed; defendants remanded for resentencing.

All concurred.