## PEOPLE v WESTERFIELD

1. Receiving Stolen Goods—Guilty Knowledge—Actual Knowledge—Constructive Knowledge—Facts and Circumstances.

   A defendant must have received stolen property knowing it to have been stolen before he is guilty of unlawfully receiving or concealing stolen property; guilty knowledge means not only actual knowledge but constructive knowledge through notice of facts and circumstances from which guilty knowledge may be fairly inferred.

2. Appeal and Error—Sufficiency of Evidence—Preliminary Hearings—Preserving Question.

   A challenge that the evidence presented at a preliminary examination was insufficient which was not raised prior to or at trial cannot be raised for the first time on appeal.

3. Criminal Law—Sentencing—Aggravation of Sentence—Other Crimes—Confessions—Due Process.

   A judge may not aggravate a sentence imposed upon a convicted defendant because of what he perceives to be the defendant's failure to confess fully to other possible criminal behavior; a sentence based on such considerations amounts to a denial of due process.

4. Criminal Law—Sentencing—False Information—Objections— Duty of Court—Assumptions—Proof.

   A sentencing judge has a duty to ascertain, upon objection by a defendant, that the defendant is not prejudiced in sentencing by false information; that duty is not fulfilled where a convicted defendant is sentenced on the basis of assumptions of fact based on no proof and inconsistent with defendant's version of the facts.

References for Points in Headnotes

[1] 66 Am Jur 2d, Receiving and Transporting Stolen Property § 9.
   Knowledge imputed to reasonable man as test of knowledge of defendant in prosecution for larceny or receiving stolen property. 147 ALR 1058.
[2] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[3, 4] 21 Am Jur 2d, Criminal Law §§ 527, 535, 536.

Appeal from Recorder's Court of Detroit, Michael J. Connor, J. Submitted April 14, 1976, at Detroit. (Docket No. 23522.) Decided October 19, 1976.

Ronnie Westerfield was convicted of receiving or concealing stolen property of a value greater than $100. Defendant appeals. Conviction affirmed but remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Charles P. Kellett,* Assistant Prosecuting Attorney, for the people.

*Keller & Svenson,* for defendant.

Before: D. E. HOLBROOK, P. J., and BRONSON and D. C. RILEY, JJ.

BRONSON, J. Defendant was convicted after a bench trial of receiving or concealing stolen property of a value greater than $100. MCLA 750.535; MSA 28.803. He was sentenced to a term of one year in the Detroit House of Correction. He now appeals by right.

Defendant was arrested for unlawfully driving away a motor vehicle, MCLA 750.413; MSA 28.645, when he and three other youths were found hiding in the vicinity of a 1957 Chevrolet that had been stolen. His arrest arose solely from his connection with this Chevrolet. Police ascertained that the youths had arrived on the scene in a 1966 Thunderbird that defendant claimed to own. In the rear of the Thunderbird, police found bolt cutters and a lock slammer, tools described as car thieves' tools.

The police seized the Thunderbird and, after inspection, noted that the vehicle identification number (VIN) plate on the door appeared to have been recently affixed. In verifying that the Thunderbird's license plates had been issued to defendant, they discovered that the typewritten serial number on his registration had been altered by pen. The penned-in registration number conformed with the suspicious VIN number that was found on the car's door.

The police, suspecting that the Thunderbird's door plate VIN was not the original, searched for a "confidential number". This number had been ground off, but police experiments enabled them to reconstruct the confidential number. This number did not match the door plate VIN. A check of confidential numbers revealed that a Thunderbird with that number had been reported as stolen by a Ms. Porenda 15 days prior to the arrest of defendant for the Chevrolet offense. On the basis of this investigation, defendant was arrested for receiving and concealing stolen property.

Ms. Porenda testified at trial that she had turned down offers of $800 and $1,000 for the car shortly before it had been stolen. She testified that the car was in excellent shape when it had been stolen but that when it was returned to her, the ignition had been changed, the starter didn't work, the wiring was out of commission, the interior lights had been pulled out, and the seat belts had been ripped up.

Defendant testified that he had purchased the Thunderbird in Detroit from a friend two days prior to his arrest, not knowing that it was stolen. He admitted to having paid only $350 for the car and that he had reported to the Secretary of State that he had paid $75 for it. He acknowledged that

he had no use for the bolt cutters or the lock slammer in his work and was unable to give any explanation for having them in his possession. In addition, he acknowledged that he had registered the car in Albion, Michigan, although he lived in Detroit, had no relatives in Albion, and gave no explanation of why he went all the way to Albion to register the car. On appeal, defendant asserts that insufficient evidence was presented at trial to establish the elements of the offense of which he was convicted. Specifically, defendant claims that the element of guilty knowledge was not established at the trial below. We disagree.

There is no question but that an essential element of the offense charged here is that of the defendant's guilty knowledge at the time he received the property, or aided in its concealment. To be guilty of this offense, defendant must have received the car in question knowing it to have been stolen. *People v Tantenella,* 212 Mich 614, 619; 180 NW 474 (1920). See, also, *People v Brewer,* 60 Mich App 517; 231 NW2d 375 (1974), *People v McLott,* 55 Mich App 198; 222 NW2d 178 (1974), and *People v Kyllonen,* 66 Mich App 467; 239 NW2d 410 (1976).

Guilty knowledge, as with most states of mind, cannot generally be proved by direct evidence absent admission by the defendant. By the very nature of the element, it must usually be inferred from all of the various circumstances of the case. Thus, in *Tantenella, supra,* 621, it was said:

"Guilty knowledge means not only actual knowledge, but constructive knowledge, through notice of facts and circumstances from which guilty knowledge may fairly be inferred."

The evidence held sufficient to prove guilty

knowledge in *Tantenella* was in many ways strikingly similar to the evidence presented in the instant case. There the Supreme Court, in finding that sufficient evidence of guilty knowledge had been presented to sustain a jury verdict of guilty, relied in part on the fact that defendant had come into possession of the stolen car shortly after it was stolen, that the car's condition had been changed, that the defendant possessed a fictitious bill of sale for the car, and the fact that the identification number on the motor of the car had been altered. Similarly, in this case, the condition of the vehicle itself contradicts defendant's assertion that he was an innocent and unsuspecting purchaser. The vehicle identification number (VIN) plate on the door showed visible signs of recent tampering, and the car's wiring and interior lights were out of commission. The VIN number on the car registration had been noticeably altered. Defendant had purchased the car within a relatively short time after it had been stolen.

In addition, here the defendant admitted at trial that he had paid only $350 for the car, a suspiciously low price in view of the car owner's testimony that she had recently turned down offers of $800 and $1,000 for the car, and defendant had reported to the Secretary of State that he had paid $75 for the vehicle. Moreover, this defendant was found to be in possession of tools commonly used for stealing cars, had no use for the tools in his work, and was unable to give any explanation for having them. He apparently went far out of his way to register the car in out-state Michigan and was unable to offer an explanation for doing so. The combination of all of these various facts and circumstances provides substantial support for an inference that defendant knew the car was stolen when he received it.

Upon reviewing findings of fact by a judge sitting without a jury in a criminal case, we do not reverse unless, on the entire record, we are left with the definite and firm conviction that a mistake has been committed. *People v White,* 53 Mich App 51, 55; 218 NW2d 403 (1974), *People v Hubbard,* 19 Mich App 407; 172 NW2d 831 (1969), *aff'd,* 387 Mich 294; 196 NW2d 768 (1972). See, also, *Tuttle v Department of State Highways,* 397 Mich 44; 243 NW2d 244 (1976). We are required to give special regard to the trial court's opportunity to judge the credibility of witnesses. GCR 1963, 517.1. We are not persuaded that a mistake was made.

Defendant also challenges the sufficiency of the evidence presented at the preliminary examination. However, this issue was not raised prior to or at trial and cannot be raised for the first time on appeal. *People v Lutzke,* 68 Mich App 75, 78; 241 NW2d 765 (1976), *People v Miller,* 62 Mich App 495; 233 NW2d 629 (1975).

Defendant finally asserts that he is entitled to resentencing, arguing that the circumstances surrounding the imposition of sentence in this case deprived him of due process and his Fifth Amendment right to remain silent. The record reveals that the trial judge, after finding defendant guilty as charged and after setting a sentencing date, advised defendant as follows:

*"The Court:* * * * Now the probation department is going to set up a probation hearing for you, you had better be very frank with them. I am going to be kind of interested in knowing where you learned to take care of a car in this manner. And keep in mind that you can be sentenced up to five years on this."

At the sentencing proceedings, immediately af-

ter defense counsel had presented an argument as to why defendant would be a good risk for probation, the trial judge began to question the defendant about where he had learned the business of stealing cars, removing VIN numbers and why defendant was carrying tools for stealing cars in his automobile. Defendant asserted that he had learned the business of stealing cars from the juveniles who were with him when he was arrested, that a man named Bubba, whose last name defendant did not know, was responsible for removing the VIN numbers, and that defendant himself knew nothing about the process of removing VIN numbers or where Bubba did this work. The trial judge indicated that he thought it more likely that defendant was teaching the juveniles the business of stealing cars, indicated that he did not believe that defendant knew as little about Bubba as he claimed, and that he doubted defendant's assertion of ignorance of the process of removing VIN numbers.

In the course of the questioning defendant stated that he had not stolen the 1966 Thunderbird for possession of which he was on trial, but admitted having known that the car was stolen. He also admitted having previously stolen five or six other cars.

The court imposed sentence as follows:

"*The Court:* Well, it is the sentence of this Court that you be sentenced to the Detroit House of Correction for a period of one year, and part of the reason you are doing that one year is because I don't believe anything you are telling me.

"I told you at the time you were found guilty that you better be prepared to be honest with me about these cars, and I don't believe anything you have told me.

*"Defendant:* I am being honest.

*"The Court:* All right, one year in the Detroit House of Correction."

Since the trial judge frankly stated that the sentence which he was imposing was in part due to his disbelief of defendant's answers to his questions, the question presented at this time is whether a sentencing judge may aggravate the sentence imposed on a convicted defendant because of what he perceives to be the defendant's failure to confess fully to other possible criminal behavior. We hold that he may not.

In *People v Grable,* 57 Mich App 184; 225 NW2d 724 (1974), this Court held that a sentencing judge could not increase the sentence imposed for the reason that the defendant refused to admit his guilt of the offense of which he had been convicted. The defendant in that case had maintained his innocence throughout the trial and continued to do so after conviction. It was held that he had a right to do so without penalty. *Grable, supra,* 188–189.

The instant case differs from *Grable* in that here the sentencing judge was successful in eliciting an admission of guilt of the charged offense from the defendant, despite defendant's proclamations of innocence at trial. While *Grable* clearly indicates that it was error for the court to compel this admission by threatening defendant with the higher sentence, here the trial judge went even farther and increased defendant's sentence on this conviction because he did not believe that defendant had fully confessed to other offenses for which he had never even been charged.

Moreover, the procedure employed in the instant case raises a serious question as to whether defendant was sentenced on the basis of accurate

information. Since the trial judge enhanced defendant's sentence because he did not believe defendant's confession as to his involvement in other criminal activity was complete, although defendant asserted that he was being honest, it is apparent that, in effect, defendant's sentence was increased because of the trial court's belief that defendant was guilty of offenses which defendant denied. There was no proof to support this conclusion by the trial court. A sentence based on such considerations amounts to a denial of due process. *People v Zachery Davis,* 41 Mich App 683; 200 NW2d 779 (1972), *People v Perine,* 7 Mich App 292; 151 NW2d 876 (1967), *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972). A sentencing judge has a duty to ascertain, upon objection by a defendant, that the defendant is not prejudiced in sentencing by false information. *People v McIntosh,* 62 Mich App 422; 234 NW2d 157 (1975). That duty is not fulfilled where, as here, a convicted defendant is sentenced on the basis of assumptions of fact based on no proof and inconsistent with defendant's version of the facts.

Affirmed. Remanded for resentencing before a different judge. We do not retain further jurisdiction.