PEOPLE v SALATA

1. EVIDENCE—ADMISSIBILITY OF EVIDENCE—DISCRETION OF TRIAL
   COURT—ABUSE OF DISCRETION—APPEAL AND ERROR.
   Generally, the admissibility of evidence rests in the discretion of
   the trial court, which should not be disturbed on appeal absent
   an abuse of discretion.

2. CRIMINAL LAW—EVIDENCE—SIMILAR ACTS—DEFENDANT'S INTENT,
   MOTIVE OR KNOWLEDGE—STATUTES.
   The "similar acts statute" which allows the prosecution to intro-
   duce evidence of similar acts if that evidence tends to show a
   defendant's intent, motive or knowledge is not a carte blanche
   for the prosecution's introduction of inadmissible, prejudicial
   testimony (MCLA 768.27; MSA 28.1050).

3. EVIDENCE—CRIMINAL LAW—SIMILAR ACTS—ACTS OF DEFENDANT—
   ACTS OF THIRD PERSON—GUILTY KNOWLEDGE—STATUTES.
   Only evidence of a defendant's acts, not those of a third person,
   are admissible as evidence under the similar acts statute;
   therefore, evidence that a brother of a defendant, being tried
   for receiving and concealing stolen property, bought a similar
   car from the same seller after the defendant bought his car
   from that seller and that the defendant's brother then reported
   it stolen the day after the defendant's car was impounded, does
   not show the defendant's guilty knowledge at the time he
   acquired his car that it was a stolen car and could not be
   admitted against the defendant as they were not the acts of the
   defendant (MCLA 768.27; MSA 28.1050).

4. RECEIVING STOLEN GOODS—ELEMENTS OF CRIME—GUILTY KNOWL-
   EDGE—STATUTES.
   The elements of the crime of receiving or aiding in the conceal-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 881.

[2, 3] 29 Am Jur 2d, Evidence § 298 et seq.

[4–6] 66 Am Jur 2d, Receiving Stolen Property §§ 3–10.
   What amounts to "exclusive" possession of stolen goods to support
   inference of burglary or other felonious taking. 51 ALR3d 727.

[5, 6] 66 AM Jur 2d, Receiving Stolen Property §§ 25–31.

ment of stolen property are (1) the property was stolen, (2) the receiving of the property by the defendant, (3) the identity of the goods as those previously stolen, (4) the value of the property and (5) the guilty knowledge of the defendant (MCLA 750.535; MSA 28.803).

5. Receiving Stolen Goods—Guilty Knowledge—Evidence—Direct Evidence—Inferences—Circumstances of Case—Factors.

Guilty knowledge in receiving or aiding in the concealment of stolen property generally cannot be proved by direct evidence; by its very nature, it must usually be inferred from all of the circumstances of the case; factors which have been held to support the inference of guilty knowledge include: (1) the defendant's possession of the stolen article shortly after it was stolen, (2) change in the condition of the stolen article, (3) alteration of identifying marks, serial numbers, or registration, (4) a purchase price out of line with the article's value, and (5) lack of any reasonable explanation from the defendant for his possession of the item.

6. Receiving Stolen Goods—Automobiles—Motions—Directed Verdict—Acquittal—Lapse of Time—Altered Vehicle Identification Number—Price Paid by Defendant—Explanation For Possession of Stolen Goods.

A defendant's motion for a directed verdict of acquittal should have been granted by the trial judge at the defendant's trial for receiving and concealing a stolen automobile where guilty knowledge of the defendant was not proved and could not be inferred from the facts where: (1) there was a six-month lapse of time between the time the car was stolen and the time the defendant purchased the car, and therefore, the car could not be considered recently stolen, (2) the car had an altered vehicle identification number, but the prosecution's expert witness testified that the average person could not detect that fact, (3) the defendant did not buy the car at a price out of line with the car's value at the time of the purchase, and (4) the defendant did produce a reasonable explanation for his possession of the car.

Appeal from Wayne, Joseph A. Moynihan, Jr., J. Submitted June 6, 1977, at Detroit. (Docket No. 28010.) Decided November 8, 1977.

Joseph Salata was convicted of receiving and

concealing stolen property. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, and *Edward R. Wilson,* Research Training & Appeals, for the people.

*Domnick J. Sorise,* Assistant State Appellate Defender, for defendant on appeal.

Before: J. H. GILLIS, P. J., and BRONSON and R. E. ROBINSON,* JJ.

R. E. ROBINSON, J. Defendant raises three issues on this appeal, but we treat only two of them:

A. Where defendant was charged with receiving and concealing stolen property, did the trial court err in permitting testimony concerning defendant's brother's subsequent purchase of a similar automobile from the same seller who sold the stolen auto to defendant and testimony concerning the alleged theft of defendant's brother's car the day after the stolen car was impounded by police? We find that the admission of such testimony was *error.*

B. Did the people produce sufficient evidence of guilty knowledge where defendant did not acquire the stolen car until six months after it was stolen and paid a purchase price not markedly below market value, and where the people's expert witness testified that a member of the general public could not detect the altered vehicle identification number? We conclude that the evidence was not sufficient.

On January 15, 1976, defendant was convicted by a Wayne County Circuit Court Jury of receiv-

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

ing and concealing stolen property contrary to
MCLA 750.535; MSA 28.803. He was placed on
probation for two years, with the first 90 days to
be spent in Detroit House of Correction, and or-
dered to pay court costs of $300.

The facts giving rise to the charge against de-
fendant are as follows. A leased, gold-colored, 1974
Lincoln Mark IV automobile was stolen during
September, 1974, and the insurer of the automo-
bile paid the lessor $9,500 for this loss. On May 28,
1975, the stolen car was located in defendant's
driveway in Inkster, Michigan, with an altered
vehicle identification number. The car was then
impounded, and, following a police investigation,
defendant was arrested in September, 1975.

Defendant testified that he first saw the car on
March 16, 1975, with a "for sale" sign in its
window, and called the telephone number adver-
tised there. Defendant haggled over the price with
the purported owner, who was asking $6,600 for
the car, but agreed to sell it for $6,200. The
transaction was completed at a local Secretary of
State's office, where defendant paid the required
tax and license fees of nearly $280.

Defendant further testified that substantial work
was done on the car after he purchased it, includ-
ing body repairs and an engine tune-up. Even after
those repairs, however, the car brought only $6,-
800 when it was resold following impoundment by
the police.

At the beginning of trial, defense counsel made
a motion *in limine* to suppress testimony concern-
ing a transaction between the seller and defend-
ant's brother, particularly evidence that defend-
ant's brother's car was reported stolen the day
after defendant's car was impounded. The trial
court reserved judgment on the motion, and prior

to recross-examination of defendant, the testimony was presented to the court in the absence of the jury. The court ruled the testimony admissible, and the jury was returned to the courtroom.

Defendant then testified that he gave his brother's telephone number to the seller while in the Secretary of State's office, explaining that he had done so because his brother had recently had an auto accident and the seller claimed to have "more transportation" to sell. Defendant further admitted that his brother had also purchased a 1974 Lincoln Mark IV. He stated, however, that he was not suspicious even though the seller claimed to be selling the stolen car to defendant because of a quarrel with his wife, since he took that claim to be "the sales pitch". Defendant testified that he bought the car because it was a good deal which someone else would take if he didn't. Further questioning brought out the fact that defendant's brother's car was stolen the day after defendant's car was impounded and never recovered.

## Issue A

Generally, the admissibility of evidence rests in the discretion of the trial court, which will not be disturbed on appeal absent an abuse of discretion. *People v Ebejer,* 66 Mich App 333, 340; 239 NW2d 604 (1976), *People v Ranes,* 63 Mich App 498, 507; 234 NW2d 673 (1975). Necessarily conceding that the evidence was prejudicial, the people argue that the evidence was properly admissible under the "similar acts statute", MCLA 768.27; MSA 28.1050, to show defendant's intent, motive or knowledge. That statute, however, is not a carte blanche for the prosecution's introduction of inadmissible, prejudicial testimony. *People v Frank Johnson,* 58 Mich App 1, 4; 226 NW2d 730 (1975).

The people's argument that evidence of defendant's brother's transaction with the seller was properly admitted under the similar acts statute must be rejected. Only evidence of *defendant's* acts, not those of a third person, are admissible under the similar acts statute. Thus, only the fact that defendant gave out his brother's telephone number could be admitted, and that fact alone shows very little, if anything, about guilty knowledge. The fact that defendant's *brother* bought a similar car from the same seller *after* defendant bought his car and then reported it stolen *the day after* defendant's car was impounded, are not *defendant's* acts and do not show *defendant's* guilty knowledge *at the time he acquired his car.* The inapplicability of the similar acts statute is demonstrated by the prosecutor's brief itself when it cites the following as a fact supporting an inference of defendant's guilty knowledge:

"4) The defendant's brother's car was stolen the same day that defendant's was picked up and never recovered (163–164), the inference being that *the second Mark IV* was also stolen and *the brother* was attempting to avoid prosecution."
(Appellee's Brief on Appeal, p 10.) (Emphasis added.)

Such evidence is not only inadmissible under the similar acts statute, it is also irrelevant to the charges against defendant—and for the same reasons. Defendant's brother's actions have no bearing on defendant's guilty knowledge, and they could not possibly show such knowledge at the time defendant received the stolen car because they did not occur until afterwards. Since the evidence is undeniably prejudicial and could not properly be admitted under the similar acts statute, the trial court erred in permitting it at trial.

We need not consider whether this error alone would justify reversal, however, because we find that there was insufficient evidence of guilty knowledge and reverse on the basis of both errors.

## Issue B

In *People v Keshishian,* 45 Mich App 51, 53; 205 NW2d 818 (1973), this Court set out the elements of receiving or aiding in the concealment of stolen property:

"The elements of this offense are as follows: (1) the property was stolen, (2) the receiving of the property by the defendant, (3) the identity of the goods as those previously stolen, (4) the value of the property, and (5) the guilty knowledge of the defendant."

It is well settled that the fifth element, guilty knowledge, must be found to have existed *at the time defendant received the stolen property.* *People v Westerfield,* 71 Mich App 618, 621; 248 NW2d 641 (1976), *People v Tantenella,* 212 Mich 614, 619; 180 NW 474 (1920). As in *Keshishian,* defendant concedes that elements 1 through 4 were proved; he argues, however, that guilty knowledge was not proved as required. *Id.,* 53.

Guilty knowledge generally cannot be proved by direct evidence; by its very nature, it must usually be inferred from all of the circumstances of the case. *People v Westerfield,* 71 Mich App 618, 621; 248 NW2d 641 (1976). Factors which have been held to support the inference of guilty knowledge include: (1) the defendant's possession of the stolen article shortly after it was stolen, (2) change in the condition of the stolen article, (3) alteration of identifying marks, serial numbers, or registration, (4) a purchase price out of line with the article's

value, and (5) lack of any reasonable explanation from the defendant for his possession of the item. *Westerfield, supra,* at 622.

Analyzing each of these factors one at a time, it becomes apparent that the people produced insufficient evidence of guilty knowledge by defendant at the time he received the stolen automobile. Because defendant purchased the car six months after it was stolen, no inference of guilty knowledge can arise because of the first factor mentioned above. In *People v Brewer,* 60 Mich App 517, 521; 231 NW2d 375 (1975), where the inference as to "recently stolen property" was permitted, the time span involved was only one hour; in *People v McLott,* 55 Mich App 198, 201, 203; 222 NW2d 178 (1974), the time lapse was only three hours. The six months involved here is simply too long for the car to be considered "recently" stolen.

Likewise, consideration of the second factor raises no inference of guilty knowledge. This factor was applied in *Westerfield, supra,* at 622, as follows:

"Similarly, in this case, the condition of the vehicle itself contradicts defendant's assertion that he was an innocent and unsuspecting purchaser. The vehicle identification number (VIN) plate on the door showed visible signs of recent tampering, and the car's wiring and interior lights were out of commission. The VIN number on the car registration had been noticeably altered."

In the instant case, however, there were no such suggestive irregularities in the condition of the car when defendant purchased it, and no inference of guilty knowledge can arise.

Similarly, no inference of guilty knowledge can arise on account of the third factor noted above.

Although the people's expert witness testified that the vehicle identification number had been altered, he also stated that the average person could not detect that fact. Consequently, no inference of guilty knowledge can be made. With respect to the comparison of purchase price to value of the car, there was in reality no comparison to be made. Although the prosecution offered evidence of the amount paid by the insurer of the car when it was stolen *six months earlier,* no evidence was offered of the value of the car at the time defendant acquired it for $6,200 (plus taxes of $280). In fact, after the police impounded it, the car was resold for only $6,800—after defendant had substantial body work and a tune-up performed. This case is certainly far different from the situation in *Westerfield, supra,* in which the Court found sufficient evidence of guilty knowledge. There, the owner of the stolen car had turned down offers of $1,000 and $800 for her car shortly before it was stolen, and the defendant admitted to paying only $350 for it less than two weeks later and reporting a sale price of only $75 to the Secretary of State.

In *Westerfield,* the defendant paid only about one-third the value of the car he received; in the case at bar, defendant paid two-thirds the amount paid by the insurance company and 90% of the price recovered upon resale of the car, which price was obtained after substantial repairs by defendant. Such evidence is not sufficient to dispel any reasonable doubt as to defendant's guilty knowledge, and defendant's motion for directed verdict should have been granted.

Finally, defendant did produce a reasonable explanation for his possession of the car; he saw it with a "for sale" sign in the window, and paid over $6,000 *plus* $280 in taxes and license fees to

buy it. There was no indication here that defendant had no explanation for possessing tools commonly used in stealing cars or traveling far out of his way to register the car in out-state Michigan as occurred in *Westerfield, supra,* at 622. Nor is this case like *United States v Prujansky,* 415 F2d 1045, 1051 (CA 6, 1969), in which the defendant was discovered unloading stolen televisions from a U-Haul truck, but had no receipts and had made no entries in his books for the merchandise and made no explanation for those deficiencies.

Because the people failed to produce sufficient evidence to justify a verdict of guilty beyond a reasonable doubt, *People v Blackwell,* 61 Mich App 236, 241; 232 NW2d 368 (1975), defendant's motion for directed verdict of acquittal should have been granted.

Reversed.