*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ACC, Minor.

PEOPLE OF THE STATE OF MICHIGAN,

Petitioner-Appellee,

v

ACC,

Respondent-Appellant.

UNPUBLISHED
January 19, 2023

No. 360476
Wayne Circuit Court
Family Division
LC No. 2021-000809-DL

Before: HOOD, P.J., and SWARTZLE and REDFORD, JJ.

PER CURIAM.

Respondent appeals as of right his juvenile adjudications following a bench trial for receiving and concealing a stolen motor vehicle (receiving and concealing), MCL 750.535(7), carrying a pneumatic gun during the commission of a felony (felony-firearm), MCL 750.227b(2), and operating a vehicle without a valid license, MCL 257.904(1). The trial court ordered that respondent be placed on level 1 probation, with electronic monitoring, substance-abuse services, drug screens, and counseling. We affirm.

## I. BACKGROUND

This case involves a mid-September 2021 traffic stop and search of a stolen vehicle. River Rouge Police Officer Tresean Miller, along with his partner, Officer James Vanderaa, received a dispatch call informing them of a stolen vehicle "possibly with armed weapons." Miller and Vanderaa located and stopped the vehicle, a Ford Escape. Other officers responded to the scene to assist Miller and Vanderaa, including River Rouge Police Officer Alaa Hussein.

Seven individuals occupied the Ford Escape, including respondent, who was driving. At the time of the stop, respondent was 15 years old. Officer Miller approached the driver side of the Escape while Officer Vanderaa approached the passenger side. Miller asked respondent for his license, registration, and proof of insurance. Respondent did not have any of the documents Miller

requested. Miller also asked respondent if there were any weapons inside the vehicle and informed respondent that he stopped the vehicle because it was stolen. Respondent told Miller there was "a BB gun under the driver seat." At that point, Miller asked respondent to "step out of the vehicle," informed Vanderaa about the BB gun, "detained" respondent, and placed him in the back of his patrol car.[1] At some point, respondent said that his cousin gave him the vehicle "to drive to school." It is not clear from the record when respondent made this statement. Miller denied that respondent gave any indication that he knew the vehicle was stolen.

After the police removed the occupants from the vehicle, they searched it and found various items inside. Miller found a cellular telephone in the driver seat. Vanderaa testified that he found a backpack, containing two laptops, an Apple iPad, a card scanner, a counterfeit $20 bill, and multiple gift cards. The testimony did not clarify where Vanderaa found the backpack. Hussein found counterfeit money "scattered all around the vehicle," including "inside of the backpack as well." Hussein also testified that, on the "floor board area" of the front passenger side of the vehicle, he found a plastic bag that contained a scale and "a large amount of marijuana." At trial, defense counsel objected to testimony regarding these items, and the court admitted them over counsel's objections.

After closing arguments, the trial court concluded there was sufficient evidence to find respondent guilty beyond a reasonable doubt on all three charges. The court noted the officers' uncontradicted testimony, its finding that the vehicle was "clearly" stolen, and that the circumstantial evidence, notably the items found in the vehicle, supported the conclusion that respondent was guilty of receiving and concealing a stolen motor vehicle. Regarding the felony-firearm charge, the trial court noted respondent's own admission to police that he knew a BB gun was inside the vehicle. The court entered an order of adjudication finding respondent responsible on all three charges and placing him on level 1 probation. This appeal followed.

## II. EVIDENTIARY CHALLENGES

Respondent first argues that the trial court improperly failed to suppress evidence of items found in the vehicle he was driving and statements he made to police while allegedly in custody. We agree in part, disagree in part, and address each argument in turn.

## A. STANDARD OF REVIEW

Generally, "[t]he decision whether to admit evidence is within the trial court's discretion," and "will be reversed only where there is an abuse of discretion." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted). A trial court necessarily abuses its discretion by admitting evidence that is inadmissible as a matter of law, *Gursky*, 486 Mich at 606, but a decision on a close evidentiary question ordinarily cannot be an abuse of discretion, see *People v Blackston*, 481 Mich

---

[1] Vanderaa testified that he removed the front-seat passenger from the vehicle and "other responding officers" helped remove the other passengers from the vehicle, some of whom were seated in the trunk.

451, 467; 751 NW2d 408 (2008). Decisions regarding the admission of evidence also frequently involve preliminary questions of law, such as whether a rule of evidence or statute precludes admitting the evidence, which this Court reviews de novo. *Gursky*, 486 Mich at 606.

Respondent objected below to the relevance of the evidence concerning the various items recovered from the Ford Escape. But he did not argue that the admission of the items was unfairly prejudicial. He also did not challenge the admissibility of his statements to the police. These issues, therefore, are unpreserved. See *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019), citing MRE 103(a)(1) ("To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal."). Unpreserved evidentiary errors are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. . . . Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings[] independent of the defendant's innocence. [*Id.* (quotation marks and citations omitted).]

## B. EVIDENCE OF ITEMS SEIZED FROM VEHICLE

Respondent argues that the officers' testimony on the recovered items was inadmissible because it was irrelevant to the charge of receiving and concealing and, in turn, also to the resultant felony-firearm charge. We disagree.

Unless otherwise excluded, all relevant evidence is admissible. See MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. See also *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012). Evidence is admissible under MRE 401 if it is material and probative. *People v Mills*, 450 Mich 61, 67; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). "Evidence is probative if it tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *People v Denson*, 500 Mich 385, 401-402; 902 NW2d 306 (2017), quoting MRE 401. "Materiality, under Rule 401, is the requirement that the proffered evidence be related to any fact *that is of consequence* to the action." *Id.* (quotation marks and citation omitted; emphasis in original). "Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial." *Id.* (quotation marks and citation omitted). "[A] material fact need not be an element of a crime or cause of action or defense but it must, at least, be in issue in the sense that it is within the range of litigated matters in controversy." *Mills*, 450 Mich at 67-68.

The main question at trial was whether respondent knew the Ford Escape was stolen. MCL 750.535(7) states, in relevant part, that "[a] person shall not buy, receive, possess, conceal, or aid in the concealment of a stolen motor vehicle knowing, or having reason to know or reason to believe, that the motor vehicle is stolen, embezzled, or converted." Circumstantial evidence and the reasonable inferences drawn from that evidence can prove the elements of a crime. *Carines*, 460 Mich at 757. Generally, without a defendant's admission, a prosecutor cannot prove knowledge with direct evidence. *People v Westerfield*, 71 Mich App 618, 621; 248 NW2d 641 (1976). Rather, the prosecutor proves knowledge through inferences drawn from circumstantial evidence. *Id.*

Respondent maintained that he did not know the Ford Escape was stolen. He asserted, instead, that his cousin lent him the car to drive to school. But he admitted knowing about the BB gun underneath his seat. The trial court found that the items recovered from the vehicle—specifically the BB gun, backpack, counterfeit money, gift cards, "computer items," marijuana, and scale—dispelled respondent's claim of ignorance and innocence, even though the evidence was circumstantial. The court found that the vehicle was "clearly" stolen and there was "no contradiction of that."

The seized items fall into two categories: the BB gun and everything else. The BB gun is relevant because it bears directly on one of respondent's charges. Further, respondent's admission and the location of the BB gun, which was found directly under his seat, amplify the BB gun's probative value. Knowingly possessing a BB gun or prop gun tends to make it more likely that respondent knew the vehicle was recently stolen or was even involved in its theft.

The remaining items recovered from the vehicle—the backpack, counterfeit money, gift cards, card scanner, computers, marijuana, and scale—are less clear, but still satisfy the low threshold for relevance. The prosecution had to establish that the Ford Escape was stolen and that respondent knew, or had to reason to know or believe, that it was stolen. See MCL 750.535(7). The prosecution offered the officers' testimony regarding the BB gun, backpack, counterfeit money, gift cards, card scanner, computers, marijuana, and scale to establish that respondent knew, or had reason to know, that the vehicle was stolen. Unlike the BB gun, which officers found under respondent's seat, and the counterfeit currency, which was found throughout the vehicle, there was little information about the location of the backpack and its contraband. Likewise, aside from officers finding the items in the vehicle respondent was driving, there was little high-confidence evidence that respondent knew the items were there, or that the items, like the vehicle, might be stolen. Nonetheless, the court could reasonably infer this. Although the inferential relevance might be slight, the evidence had some marginal relevance. It was not error for the trial court to consider the items.

## C. RESPONDENT'S STATEMENTS TO POLICE

Respondent also argues that the trial court failed to suppress evidence that he admitted to the BB gun's presence during the traffic stop. He asserts that the evidence was acquired in violation of *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), because he was subjected to a custodial interrogation without being read his rights. We disagree.

Statements made by a person during a custodial interrogation are inadmissible unless the person voluntarily, knowingly, and intelligently waives their Fifth Amendment rights. *Miranda*, 384 US at 444. But "*Miranda* warnings are not required unless the accused is subject to a custodial interrogation." *People v Steele*, 292 Mich App 308, 316; 806 NW2d 753 (2011) (citation omitted). Typically, a custodial interrogation "is a questioning initiated by law enforcement officers after the accused has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." *Id*. Whether a defendant is in custody is an objective determination based on the totality of the circumstances, and considerations of the questioning officers' unannounced views or the defendant's subjective beliefs are improper. *Yarborough v Alvarado*, 541 US 652, 662-663; 124 S Ct 2140; 158 L Ed 2d 938 (2004).

"[A] motorist detained for a routine traffic stop or investigative stop," however, "is ordinarily not in custody within the meaning of *Miranda*." *Steele*, 292 Mich App at 317 (citations omitted). This is because a police officer may detain a person suspected of committing a crime for a period sufficient to ask reasonable questions regarding the violation of law and, should new circumstances arise, may extend the detention to resolve those suspicions. *Berkemer v McCarty*, 468 US 420, 439-440; 104 S Ct 3138; 82 L Ed 2d 317 (1984). See also *People v Williams*, 472 Mich 308, 315; 696 NW2d 636 (2005). Accordingly, general questions during a traffic stop asked to investigate the facts of a potential crime do not, by themselves, implicate *Miranda*. *People v Ish*, 252 Mich App 115, 118; 652 NW2d 257 (2002).

The trial court did not plainly err by allowing the testimony regarding respondent's admission to the presence of the BB gun because respondent was not in custody when he made those statements. Officers Miller and Vanderaa temporarily detained respondent to make a reasonable inquiry into possible criminal activity, i.e., the Ford Escape was reportedly stolen in a potential armed robbery. They initiated a traffic stop and Miller, after approaching respondent's side of the vehicle, asked respondent for his driver's license, registration, and insurance. Respondent did not have any of these documents. Miller then asked respondent whether there were any weapons inside the vehicle—a reasonable question given the dispatch call indicating that the vehicle may have been stolen "possibly with armed weapons." Respondent told Miller there was a BB gun under the driver seat. Until that point, respondent was not free to go, but it cannot be said that he was subjected to a custodial interrogation.

Upon learning of the presence of the BB gun, however, Miller asked respondent to step out of the vehicle, informed his partner of the presence of the BB gun, and "detained" respondent. Miller's question regarding the presence of a weapon was asked immediately after the stop and as respondent sat in the driver's seat. It was asked to confirm or dispel Miller's suspicion regarding whether respondent was involved in stealing the Ford Escape while armed. He was not handcuffed. Miller did not ask respondent these questions in an interrogation room or in the back of a police car. Although he was stopped, he was seated in a car over which he had continued control. And although he was not free to leave, there is no indication that unique circumstances existed to impress upon respondent that he was in police custody at the time of questioning. Respondent was therefore questioned while subjected to a lawful investigatory stop, so he was not

"in custody" as required for a *Miranda* violation. Accordingly, he is not entitled to relief. *Steele*, 292 Mich App at 316. See also *Berkemer*, 468 US at 437-440.[2]

## III. SUFFICIENCY OF THE EVIDENCE

Finally, respondent argues that there was insufficient evidence[3] to establish the charges for receiving and concealing and felony-firearm. Respondent essentially argues that, accepting the merits of his evidentiary challenges, there was no admissible evidence to support that he knew the Ford Escape was stolen, as required to establish guilt on the receiving-and-concealing charge. He asserts that this defect in his receiving-and-concealing adjudication warrants reversal (or a new trial) on the felony-firearm count as well. We disagree.

### A. STANDARD OF REVIEW

We review de novo a challenge to the sufficiency of the evidence, viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the elements of the offense were proved beyond a reasonable doubt. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). In doing so, we draw all reasonable inferences in support of the verdict, *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000), and do not interfere with the trier of fact's role in determining the weight of the evidence or the credibility of witnesses, *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992). The elements of a crime may be established by circumstantial evidence and reasonable inferences arising from that evidence. *Carines*, 460 Mich at 757.

### B. LAW AND ANALYSIS

As discussed, MCL 750.535(7) provides, in relevant part, that "[a] person shall not buy, receive, possess, conceal, or aid in the concealment of a stolen motor vehicle knowing that the motor vehicle is stolen, embezzled, or converted." It is undisputed from the record that respondent possessed a stolen vehicle at the time Miller stopped him. The key issue, as noted earlier, is

---

[2] Even if Miller and Vanderaa subjected respondent to a custodial interrogation, the "public safety" exception to the *Miranda* rule applies. That exception provides that overriding considerations of public safety may justify a police officer's failure to provide *Miranda* warnings before asking questions regarding the presence of a weapon. See *New York v Quarles*, 467 US 649, 651; 104 S Ct 2626; 81 L Ed 2d 550 (1984). In *People v Attebury*, 463 Mich 662, 670-671; 624 NW2d 912 (2001), our Supreme Court applied *Quarles* and noted that "[a]lthough the *Quarles* Court repeatedly referred to 'public safety,' its use of the phrase 'public safety' clearly encompassed the safety of the officers as well as the general public." Miller received a dispatch alert that the Ford Escape was stolen "possibly with armed weapons." It was, therefore, reasonable for Miller, out of concern for his safety and that of other officers, to ask about the presence of weapons in the vehicle without first providing a *Miranda* warning to respondent.

[3] Respondent references standards for the "great weight of the evidence" and "sufficiency of the evidence." Most of his argument is properly considered to be a challenge to the sufficiency of the evidence, and we consider it as such.

whether there was sufficient evidence supporting that respondent knew, or had reason to know, of the vehicle's stolen character. See MCL 750.535(7). Further, "the elements of felony-firearm are that the defendant [(1)] possessed a [pneumatic] firearm [(2)] during the commission of, or the attempt to commit, a felony." *People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018).

The trial court concluded that the Ford Escape was "clearly" stolen. It relied on the fact that the vehicle contained a BB gun, counterfeit money, gift cards, computers, marijuana, and a scale. The court further noted that respondent was 15 years old and that he claimed he borrowed the car from a relative. The court stated: "I guess I'm supposed to presume from that that he had no knowledge that this vehicle was stolen. Although, it clearly was. There's no contradiction of that." The court agreed that the case was "circumstantial" but found that "it's been proven beyond a reasonable doubt that he was driving in a stolen vehicle and he was responsible for receiving and concealing a stolen vehicle, based on everything that I've heard . . . ."

Even without the evidence of the counterfeit money, gift cards, computers, marijuana, and scale, there was sufficient evidence to support the trial court's findings that respondent received and concealed a stolen vehicle. Respondent maintained that he had borrowed the Ford Escape from a cousin to drive to school and did not know that it was stolen. Miller denied that respondent gave any indication that he knew the vehicle was stolen. Other evidence, however, contradicted this defense. Respondent was not old enough to legally drive at the time, reducing the reasonable likelihood that someone would lend him a vehicle. He was stopped while driving the stolen vehicle, knowingly carrying a BB gun under his seat, close in time to when the vehicle was reported stolen. This supports an inference that the vehicle was stolen and that respondent may have known of its stolen nature. This is particularly reasonable when we consider Officer Miller's testimony that he received a dispatch call regarding a vehicle that was stolen "possibly with armed weapons." Although there may be alternative inferences that the court could reasonably draw, when viewed in a light most favorable to the prosecution, the evidence[4] was sufficient for the trial court to find the elements of the receiving and concealing charge—and thus also the felony-firearm charge—satisfied beyond a reasonable doubt.

We affirm.

/s/ Noah P. Hood
/s/ Brock A. Swartzle
/s/ James Robert Redford

---

[4] To the extent either party relies on the vehicle's keys in their respective arguments, that reliance is improper. Petitioner asserted during its closing argument that respondent "ha[d] keys to the car," and respondent now relies on his possession of the keys to support his argument that he did not steal the vehicle. But there was no testimony at respondent's trial indicating that respondent had the keys to the vehicle at the time of the traffic stop. The only mention of the vehicle's keys came during petitioner's closing arguments. Argument from the attorneys does not constitute evidence. See *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008); *People v Thomas*, 260 Mich App 450, 456; 678 NW2d 631 (2004).